## Sessions *v.* Johnson.

On April 5, 1870, A., in order to secure B. as his indorser, made a mortgage of certain property. This mortgage the latter, on the thirteenth of that month, assigned to C., to secure a debt due him. Oct. 4, A. made a second mortgage of the same and additional property to D. for $4,000, which sum D. paid to B. as the agent of A.; whereupon B. paid certain notes of A. upon which he as well as D. was liable as indorser. On the 12th of October, A. sold the entire property covered by both mortgages to E. for $6,000, and received the latter's notes in payment. Of them, $2,444.40 was delivered to C., and $3,555.60 to D., who thereupon released their respective mortgages. Proceedings in bankruptcy were commenced against A. Nov. 2, 1870, and he was duly adjudicated a bankrupt. His assignees then sued D. for the value of the property covered by his mortgage, and obtained, by a compromise, a judgment for $4,000, which he satisfied. They subsequently sued him for the amount paid on the said notes whereon he was liable as indorser. This suit was compromised by his paying $2,000. The assignees thereupon released all claims and demands against him, and brought the present action to recover from C., who was not a creditor of A., the $2,444.40, on the ground that it was, in fraud of the Bankrupt Act, and within six months before the filing of the petition in bankruptcy, paid to him to secure him as indorser for B., he having reasonable cause for believing A. to be insolvent, and that he thereby prevented the property from coming to the assignees for distribution, and sought to impede the operation and evade the provisions of that act. *Held,* 1. That it was incumbent upon C. to show that B. took up the notes to secure the payment of which the mortgage to the latter had been executed. 2. That, in the absence of such proof, the amount received by C. was clearly a preference by way of indemnity. 3. That the action was not barred by the satisfaction of the judgment against D. 4. That the court having charged that, if the assignees had received from D. full satisfaction for the proceeds of the sale, there could be no recovery in this action, the verdict in favor of the assignees is upon that point conclusive against C. 5. That the inquiry whether C. had paid any thing for A. was properly submitted to the jury.

Error to the Circuit Court of the United States for the District of Massachusetts.

The facts are fully stated, and the assignment of errors is set forth in the opinion of the court.

*Mr. Benjamin F. Butler* for the plaintiff in error.

*Mr. George W. Morse* and *Mr. R. M. Morse, Jr.,* contra.

Mr. Justice Clifford delivered the opinion of the court.

Even without satisfaction, a judgment against one of two joint contractors is a bar to an action against the other, within the maxim *transit in rem judicatam;* the cause of action being

changed into matter of record, which has the effect to merge the inferior remedy in the higher. *King* v. *Hoare*, 13 Mee. & W. 504.

Judgment in such a case is a bar to a subsequent action against the other joint contractor, because, the contract being merely joint, there can be but one recovery; and consequently the plaintiff, if he proceeds against one only of two joint promisors, loses his security against the other, the rule being that by the recovery of the judgment the contract is merged and a higher security substituted for the debt. *Robertson* v. *Smith*, 18 Johns. (N. Y.) 477; *Ward* v. *Johnson*, 13 Mass. 149; *Cowley* v. *Patch*, 120 id. 138; *Mason* v. *Eldred et al.*, 6 Wall. 231.

But the rule is otherwise where the contract or obligation is joint and several, to the extent that the promisee or obligee may elect to sue the promisors or obligors jointly or severally: but even in that case the rule is subject to the limitation, that, if the plaintiff obtains a joint judgment, he cannot afterwards sue them separately, for the reason that the contract or bond is merged in the judgment; nor can he maintain a joint action after he has recovered judgment against one of the parties in a separate action, as the prior judgment is a waiver of his right to pursue a joint remedy.

Different modifications of the rule also arise where the controversy grows out of the tortious acts of the defendants. Where a trespass is committed by several persons, the party injured may sue any or all of the wrong-doers, but he can have but one satisfaction for the same injury, any more than in an action of assumpsit for a breach of contract.

Courts everywhere in this country agree that the injured party in such a case may proceed against all the wrong-doers jointly, or he may sue them all or any one of them separately; but if he sues them all jointly, and has judgment, he cannot afterwards sue any one of them separately; or, if he sues any one of them separately, and has judgment, he cannot afterwards seek his remedy in a joint action, because the prior judgment against one is, in contemplation of law, an election on his part to pursue his several remedy.

Where the injury is tortious, the remedy may be joint or several; but the rule in this country is that a judgment against

one without satisfaction is no bar to an action against any one of the other wrong-doers. *Lovejoy* v. *Murray*, 3 Wall. 1; s. c. 2 Cliff. 196; *Livingston.* v. *Bishop*, 1 Johns. (N. Y.) 290; *Drake* v. *Mitchel*, 3 East. 258.

Sufficient appears to show that the bankrupts, Kane, Sprague, & Co., on April 5, 1870, mortgaged their stock, tools, fixtures, and machinery to W. W. Sprague, to secure him as their indorser; that the mortgagee, on the 13th of the same month, assigned the mortgage to the defendant below as security for a debt due from the mortgagee to the assignee of the mortgage. On the 4th of October following, the bankrupts made a second mortgage, including the property described in the first mortgage, together with other property, to E. A. Goodnow, for $4,000, which sum the mortgagee paid to the mortgagee of the first mortgage, as the agent of the bankrupts, and which he, the agent, used in part to pay three notes given by the bankrupts, upon which the mortgagees in both mortgages were indorsers. Eight days later, the bankrupts sold to Nichols and Johnson the whole property covered by the mortgages, and received in payment their notes and those of Henry W. Snow, to the amount of $6,000, which they divided as follows: $2,444.40 to the assignee of the first mortgagee, and $3,555.60 to the second mortgagee, who thereupon released their respective mortgages.

Bankruptcy proceedings against the mortgagors in the two mortgages were commenced on the 2d of November in the same year, and the plaintiffs were duly appointed assignees of the bankrupts' estate. Subsequently they sued the mortgagee in the second mortgage to recover the value of the property covered by his mortgage; and judgment was, by agreement, entered in their favor for $4,000, interest and costs, and the evidence shows that the judgment was satisfied by the judgment debtor. They, the assignees, also brought another suit against the same party to recover for the preference he obtained when the agent of the bankrupts paid three of their notes upon which the defendant in the last-named suit was indorser, which suit was settled by the payment of $2,000 and a release given by the assignees of all their claims against the defendant in that suit.

Beyond doubt, the first mortgage was valid, but it was given to secure the mortgagee as indorser for the mortgagors, and

inasmuch as the defendant failed to prove that the mortgagee had taken up any paper on which he was so liable, it is evident that the defendant derived no right to the proceeds of the property paid to him by virtue of that mortgage. Nothing having been paid by the defendant as indorser for the bankrupts, the money paid him for the release of his mortgage was plainly a preference by the way of indemnity. Proceedings in bankruptcy were commenced within four months thereafter; and the assignees brought the present suit in the District Court against the defendant to recover back the proceeds of so much of these notes given to the defendant for the release of his mortgage from the bankrupt debtors, the claim being that the amount was paid to secure the defendant for his indorsements for the insolvent debtors, he having reasonable cause to believe that they were insolvent, and that the payment was made to prevent the property from coming to the assignees for distribution, and to impede and evade the provisions of the Bankrupt Act.

Service was made; and the defendants appeared and pleaded the general issue, and that the plaintiffs previously recovered judgment against E. A. Goodnow for the value of the same property, and that the said judgment has been fully paid and satisfied.

Issue being thus raised, the parties went to trial; and the verdict and judgment were for the plaintiffs in the sum of $2,786.56 and costs of suit. Exceptions were filed by the defendant; and he removed the cause into the Circuit Court, where the parties were again heard, and the Circuit Court affirmed the judgment, and the defendant removed the cause into this court.

Five errors are assigned, to the effect following: 1. Because the District Court did not instruct the jury that the action is not maintainable, the assignees having disaffirmed the sale of the goods and received the value of the property. 2. Because the District Court did not instruct the jury that the plaintiffs were estopped by their previous proceedings from maintaining the suit. 3. Because the District Court did not instruct the jury that the plaintiffs could only have judgment for the value of the property, deducting the amount previously

recovered. 4. Because the District Court did not instruct the jury that the plaintiffs could not recover the proceeds of the property in the hands of the mortgagee so long as any contingent liability remained. 5. Because the issue submitted to the jury, whether the defendant had paid any thing for the bankrupts, was an immaterial one, if there was any outstanding and undischarged indorsement of the defendant for which he was liable.

Separate mortgages were held by the defendant and the other mortgagee, of different dates, and it appears that they were given for entirely different considerations. Of course, the respective mortgagees held the property subject to an equity of redemption in the mortgagors; and the case shows that the mortgagors sold the respective equities of redemption, and distributed the proceeds of the sale between the respective mortgagees. Throughout, the relations of the mortgagees to the insolvent debtors were entirely separate. They never held any joint claim against the insolvent mortgagors, nor did the mortgagees ever receive any joint security from the insolvent debtors for their separate claims. Instead of that, the respective equities of redemption remained in the mortgagors, and the conceded facts show that they sold the equities and distributed the proceeds between the respective mortgagees, showing to a demonstration that there never was any joint contract relation between the mortgagees and the insolvent debtors.

Even the proceeds of the sale of the equities of redemption, as distributed between the respective mortgagees, were entirely separate; nor would it make any difference if the mortgagees, in receiving their respective portions of those proceeds, had acted jointly, as it is well-settled law that where the tort is joint the injured party may have a joint or several remedy, the rule being that a judgment against one wrong-doer without satisfaction is no bar to an action against any one of the other joint tort-feasors. *Lovejoy* v. *Murray, supra.*

Joint wrong-doers may be sued separately; and the plaintiff may prosecute the same until the amount of the damages is ascertained by verdict, but the injured party can have only one satisfaction, the rule being that he may make his election *de melioribus damnis*, which, when made, is conclusive in all sub-

sequent proceedings. *Heydon's Case*, 11 Co. 50 ; *White* v. *Philbrick*, 5 Greenl. 147 ; *Knickerbocker* v. *Colver*, 8 Cow. (N. Y.) 111 ; *O'Shea* v. *Kirker*, 4 Bosw. (N. Y.) 120.

Without more, these remarks are sufficient to show that the theory of estoppel cannot be maintained, and that the first two errors assigned must be overruled, for two reasons : 1. Because the relation of joint contractors never subsisted between the insolvent debtors and the mortgagees, to whom the proceeds of the equities of redemption were distributed by the insolvent mortgagors. 2. Because the mortgagees, acted separately in accepting certain portions of the proceeds of that sale ; nor would it have made any difference if they had acted jointly, as it is settled by all the authorities that when several persons have been jointly concerned in the commission of a wrongful act they may all be charged jointly as principals, or the plaintiff may sue any one of the parties separately, torts being in their nature several, even when the wrongful act was jointly committed. Ad. Torts (3d ed.), 939.

Suppose that is so, still it is insisted by the defendant that the plaintiff cannot, in any proper view of the facts, recover more than the difference between the amount paid by the other mortgagee and the value of the property distributed. What the plaintiffs claim is the amount the defendant received from the insolvent debtors as part of the proceeds of the sale of the equities of redemption. Abundant proof is exhibited that he received $2,444.40, and it is conceded that the whole of that amount remains in the hands of the defendant.

Two sums, amounting in the whole to $6,000, were received by the plaintiffs of the second mortgagee before the present suit was instituted. $4,000 of the amount was recovered by judgment in favor of the plaintiffs. They also instituted a second suit against the same party, to recover the amount received by him in payment of the notes upon which he was liable as indorser ; which action was compromised by the payment to the assignees of $2,000, as appears by the agreed statement of facts. Such payment being made, the assignees executed a release to the defendant in that suit of all claims and demands which they, as such assignees, had against him on that account.

Judgments bind parties and privies, but they do not bind strangers; and it is clear that the present defendant was neither a party nor privy to the action in the first suit, nor had he any thing to do with the compromise of the second suit between those parties.

Enough appears in the evidence to establish that theory; but if any possible doubt could otherwise arise in respect to the conclusion, the matter is set entirely at rest by the verdict of the jury. They were told by the court that if the plaintiffs had once received full satisfaction for the proceeds of the sale from the other mortgagee, "then they can recover nothing from the defendant;" and it follows from the verdict that they did not recover in the suits against the other mortgagee any thing for the portion of notes taken for the sale of the equities which was distributed to the defendant in the present suit. All that he received remains in his hands; and inasmuch as the assignees are not estopped by the proceedings against the second mortgagee from prosecuting their claim against the defendant for the portion of the proceeds of the equities of redemption which was distributed to him by the insolvent debtors, it follows that the assignee may recover the whole amount of that portion without regard to the antecedent proceedings against the second mortgagee, which is all that need be said in response to the third assignment of error.

Both parties agree that the first mortgagee was not a creditor of the mortgagors, and that the mortgage was given merely to secure future advances or future liabilities to be incurred by indorsing the paper of the mortgagors. Nothing had been paid by the mortgagee; but the defendant insists that the portion of the notes distributed to him cannot be recovered back if any outstanding undischarged contingent liability of the kind remains.

Grave doubts arise whether that proposition is well founded in law, for two reasons: 1. Because it was the equities of redemption which the mortgagors sold, and the notes distributed represented the proceeds of that sale. 2. Because it does not distinctly appear that any such contingent liability remained at the time of the trial.

But it is unnecessary to decide that question, because the

bill of exceptions does not show that the district judge gave any instruction contrary to that construction of the mortgage to the defendant, nor does the record show what, if any, instructions he gave in that regard. Unsustained by the record, as the fourth assignment of error is, it must be overruled as inapplicable to the questions presented for decision.

Evidence to show that the defendant had paid any paper which he had indorsed for the insolvent debtors, so far as appears, was entirely wanting; nor does the transcript show that any was introduced to prove that any indorsement made by the defendant was outstanding and undischarged. Assume the facts to be so, and it would be clear that the mortgage could not avail the defendant as a defence to the claim of the assignees; and it is equally clear, that, if there were no such outstanding indorsements, then it was important for the defendant to prove that he had advanced moneys to discharge such liability.

Viewed in that light, it is impossible to sustain the fifth assignment of error, for the reason that it is shown that the inquiry whether the defendant had made any payment for the insolvent debtors was an important inquiry, and one that was properly submitted to the jury. Proper instructions, it must be assumed, were given to the jury in respect to all the issues in the case not made the subject of complaint in the bill of exceptions, and that all questions involved in the pleadings, except those presented by the assignment of errors, are correctly settled by the verdict, from which it follows that there is no error in the record.                    · *Judgment affirmed.*