**UNITED STATES of America, Plaintiff,**

v.

**Harold L. RINGLEY and James E. Manicure, Defendants.**

**No. 89–0149–B.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Nov. 2, 1990.

E. Montgomery Tucker, U.S. Atty., Roanoke, Va., Mark E. Siegel, Sp. Asst. U.S. Atty., Knoxville, Tenn., for plaintiff.

Joe H. Roberts, Wise, Va., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This case is before the court on cross-motions for summary judgment. The court has jurisdiction pursuant to 30 U.S.C. § 1232(e) and 28 U.S.C. §§ 1331 and 1345.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 23, 1981, the court entered a money judgment in Civil Action no. 81–0151–B ("original action") against Ringley and Mancuso Coal Producers, a Virginia general partnership, in favor of the United States of America ("government"). The defendant in the original action ("partnership") had operated a surface coal mining operation in Dickenson County, Virginia. The complaint in the original action alleged that the partnership had failed to pay federal reclamation fees imposed by the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C.A. §§ 1201–1328 (West 1986 and Supp.1990) (hereafter, "Act").

The partnership was composed of Harold Ringley and James E. Manicure ("partners"), the defendants in the instant case. The government achieved personal service on both partners in their capacities as registered agents of the partnership. The judgment against the partnership has not been satisfied.

On September 21, 1989, the government filed the complaint in the instant case. As in the case against the partnership, the complaint alleged failure to pay federal reclamation fees. On November 27, 1989, the government, in a motion for summary judgment, asserted that "the pleadings, the Affidavit of [a federal reclamation fee collector], ... the exhibits attached [to the motion], and the record in *U.S. v. Ringley & Mancuso Coal Producers* ... demonstrate[d] that there [was] no genuine issue as to any material fact" and thus that the government was entitled to summary judgment.

The partners responded to the government's motion with their own motion for summary judgment. The partners asserted that judgment should go to them for several reasons: (1) Failure to state a claim upon which relief could be granted; (2) discharge in bankruptcy; (3) statute of limitations; (4) collateral estoppel; and (5) *res judicata*.

## ANALYSIS

### I. THE PARTNERS' GROUNDS FOR SUMMARY JUDGMENT

At the time the government sued the partnership itself, Virginia followed the common law and did not provide for suits against partnerships as partnerships. *See McCormick v. Romans*, 214 Va. 144, 147, 198 S.E.2d 651, 653–54 (1973). Virginia abrogated the common law rule by statute in 1985, well after the government sued and recovered a judgment against the partnership.[1]

---

**1.** "Any partnership organized under the law of this Commonwealth or of another jurisdiction shall have the capacity, with or without the joinder of one or more of its partners, to ... (ii) be sued in [the] courts and agencies [of the Commonwealth] under [the name specified in its recorded certificate of partnership] or, if there is no recorded certificate, under the name by which it does business. All judgments and executions against any such partnership shall

The government, seeking to enforce a right it had under the Act, sued the partnership itself via the following language:

> [C]apacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership ... which has no capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States....

Fed.R.Civ.P. 17(b). The government did not join either Ringley or Manicure as defendants in the original action, and the judgment is against the partnership alone.

### A. *Res Judicata*

As it will aid in disposition of the partners' other grounds for summary judgment, the court will address the partners' contentions regarding *res judicata* first. Because the government sued and received a judgment against the partnership alone, the partners assert that they are now insulated from any liability for the debts of the partnership. This ground of the partners' argument for summary judgment has two prongs: (1) In Virginia, a partner will not be personally liable on a partnership debt unless the partner is named in the suit on the debt and finally named in the judgment on the suit. (2) Under the doctrine of merger, the government's claim against the partners merged into the judgment the government received against the partnership.

The partners argue that the government cannot maintain a new action against the partners themselves (which the government must do in order to satisfy (1) above) because the government has no claim against the partners, it having merged into the judgment in the original action (as pointed out in (2) above). In other words, the partners assert that the government is in the position of needing a personal judgment against the partners but of not having a claim against them. This argument requires some analysis of the law of Virginia.

The partners in their "Memorandum in Support of Merger" cite only "the common law of Virginia" to support the proposition that a partner will endure individual liability for a partnership debt only if he is named both in a suit on the debt and in the judgment on the suit. The court's research reveals that the partners are probably relying on *McCormick*.

In *McCormick*, the Virginia Supreme Court decided a case involving plaintiffs who had sued the partners of a law firm individually, and not in the name of the partnership. In upholding the plaintiffs' judgment against the partners, the Court cited a common law rule regarding partnerships: "The general rule [is] that when a suit [is] brought on a contract entered into with the firm, all of the partners ha[ve] to be joined, either as plaintiffs or defendants." *McCormick*, 214 Va. at 147, 198 S.E.2d at 653. As will be shown below, the issue here is not contractual. Nevertheless, the court feels that the rule described in *McCormick* has a general application to suits (other than tort actions) involving partners and partnerships, and the court is willing to accept it as a correct statement of Virginia's law.

The partners' second proposition is that the government's "cause of action merged into the judgment. That is, a claim against the partnership, which is the only cause of action the [government] has, was merged into the judgment it received. Any further action must be made on the judgment." The court turns now to the nature of the government's action against the partners.[2]

---

bind its real and personal property. Its partners shall also be liable for judgment and be subject to execution to the extent and in the manner provided by law." Va.Code Ann. § 50–8.1 (1989).

**2.** The partners offer no authority for the proposition that the government had a single claim against the partnership and/or partners under the Act. (It may be that separate claims against the partnership and each partner exist; *see* 30 U.S.C.A. § 1291(13) (West 1986).) While the court has not found it necessary to address whether more than one claim exists here, by its silence on the matter the court does not indicate approval of the partners' conclusory assertion that the government possessed only one claim.

This is an effort to recover reclamation fees via an "action at law to compel payment of debts." 30 U.S.C.A. § 1232(e) (West 1986). Reclamation fees are considered excise taxes. *United States v. Tri-No Enters., Inc.*, 819 F.2d 154, 159 (7th Cir.1987). This court has held that the payment of the reclamation fees is "not a contractual situation" between the government and the taxpayer. *United States v. E & C Coal Co., Inc.*, 647 F.Supp. 268, 273 (W.D.Va.1986) (federal statute of limitations for actions on contracts did not apply to actions to collect reclamation fees); 84 C.J.S. *Taxation* § 1b(2) (1954) (obligation to pay taxes is not contractual). Also, the obligation here is clearly not tortious in origin.

Virginia law provides that all partners are jointly liable for all the debts and obligations of a partnership, except for certain tortious liabilities for which partners are both jointly and severally liable. Va.Code Ann. § 50-15 (1989). This provision merely codifies the common law. 59 Am.Jur.2d *Partnership* § 639 (1987) (citing, *inter alia, Savings & Loan Corp. v. Bear*, 155 Va. 312, 154 S.E. 587 (1930)). Under the common law, when there is a judgment against a partner for a partnership debt jointly owed by the partners, the judgment "merges the original cause of action, and is a bar to another suit against the remaining partners." *Pitts v. Spotts*, 86 Va. 71, 72, 9 S.E. 501, 502 (1889) (citing *Mason v. Eldred*, 73 U.S. (6 Wall.) 231, 18 L.Ed. 783 (1867)). The rule regarding partners announced in *Pitts* is a specific application of the larger common law rule that if a judgment is rendered against one of several joint debtors, no action may thereafter be maintained on the same cause of action against any of the other debtors. *United States v. Ames*, 99 U.S. 35, 25 L.Ed. 295 (1878). Absent abrogation by statute, this common law rule still applies. 46 Am. Jur.2d *Judgments* § 543 (1969).

Almost a century after the decision in *Pitts*, the Virginia Supreme Court shed more light on its view of the doctrine of merger. In *Bates v. Devers*, 214 Va. 667, 202 S.E.2d 917 (1974), the court described *res judicata* as having "four preclusive effects, each conceptually distinct, which a final personal judgment may have upon subsequent litigation. These are merger, direct estoppel, bar, and collateral estoppel." *Id.* at 670, 202 S.E.2d at 920 (citations omitted). The court went on in dicta to indicate that merger "occurs when a valid and final personal judgment for money is entered for plaintiff. His original *cause of action* is merged into the judgment and is extinguished. Plaintiff can maintain a subsequent action only on the judgment and not on the original cause of action." *Id.* at 670, n. 3, 202 S.E.2d at 920, n. 3 (emphasis in original) (citing Restatement of Judgments § 47 (1942)).

A question posed by the instant case is whether the common law rule barring subsequent suit against other partners applies to obligations and debts that are neither contractual nor the result of tortious behavior. The United States Supreme Court, in expounding on the rule, referred to "contract or *obligation.*" *Sessions v. Johnson*, 95 U.S. 347, 348, 24 L.Ed. 596 (1877) (emphasis added). The Court in *Sessions* recognized an exception to the rule only for tortious actions. *Id.* This is because liability for torts is joint and several. *See id.*[3] The court in *Farmers' Exchange Bank v. Morse*, 129 Cal. 239, 243, 61 P. 1088, 1090 (1900), quoted Pomeroy for the rule that requiring mandatory joinder by the plaintiff-obligee of all obligors of a joint liability "'is general, and applies to all undertakings, obligations, and promises of all possible descriptions.'" Therefore, it appears that the common law rule applies to joint debts incurred by imposition of the federal reclamation fees.

The court is willing to accept the second prong of the partners' argument as a cor-

---

**3.** Virginia's common law provided that tort liability was joint and not several and that a suit against a joint tortfeasor was barred when judgment had already been obtained against another tortfeasor. *McLaughlin v. Siegel*, 166 Va. 374,

185 S.E. 873 (1936). This was a minority position in the United States and the Virginia legislature abrogated the rule in 1919 by the precursor of what is now Va.Code Ann. § 8.01–443 (1984).

rect statement of Virginia's law of merger. If this were the sum of the law to be applied in this case, the partners would have a strong case for a favorable summary judgment ruling. However, there is other law applicable here.

### 1. The court will apply federal res judicata law.

■ The United States is in this court seeking to enforce a right the government has by virtue of a federal law:

> Any portion of the reclamation fee not properly or promptly paid pursuant to this section shall be recoverable, with statutory interest, from coal mine operators, in any court of competent jurisdiction in any action at law to compel payment of debts.

30 U.S.C.A. § 1232(e) (West 1986). Thus, the court is exercising its federal question jurisdiction. See 28 U.S.C.A. § 1331 (West Supp.1990). Moreover, the court was exercising the same jurisdiction when it entered the default judgment against the partnership in the original action.

■ "Federal law governs the question whether a prior federal court judgment based on federal question jurisdiction is res judicata in a case also brought under federal question jurisdiction." 21 Fed.Proc., L.Ed. § 51:211 (1984) (citing Heiser v. Woodruff, 327 U.S. 726, 732, 66 S.Ct. 853, 855–56, 90 L.Ed. 970 (1946)); accord Shoup v. Bell & Howell Co., 872 F.2d 1178, 1179 (4th Cir.1989); Harnett v. Billman, 800 F.2d 1308, 1312–13 (4th Cir.1986); cert. denied 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987). Since the judgment in question is "a prior federal court judgment based on federal question jurisdiction," the court is not bound by Virginia's rules regarding merger but instead must look to federal law for the appropriate rule of decision. This conclusion is not changed by 28 U.S.C.A. § 2072 (which commands that the Federal Rules "shall not abridge, enlarge or modify any substantive right," 28 U.S.C.A. § 2072(b) (West Supp.1990)), for Heiser makes it clear that the source of the "substantive right[s]" the statute refers to is federal law, not state law. Stated another way, the source of the partners' substantive rights regarding merger is federal law, not the law of Virginia.

■ The court has been unable to find a federal statute that addresses the rule of merger. Moreover, while there are many federal cases that address the issue of res judicata, the court has been unable to find any case that announces a federal merger rule applicable to the peculiar facts here. See Restatement (Second) of Judgments § 18 app. (1982). Thus, this apparently being a case of first impression, the court must determine the rule of decision by turning to "general authorities and ... state law as a convenient source of reference for fashioning the applicable federal rule." United States v. Snepp, 595 F.2d 926, 936, n. 10 (4th Cir.1979) (citing Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943)); rev'd 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704; reh'g denied 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 250 (1980). As the discussion below shows, the court finds that two views of the law counsel against granting the partners' motion based on their res judicata argument.

### 2. Application of Virginia's law would frustrate one of the Act's goals.

As noted before, the United States is the plaintiff here, and it seeks to enforce the rights it has under the Act, a federal statute. The following passage from a seminal case on this issue guides the court as it searches for the proper law to apply:

> The application of state law ... would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain.

Clearfield Trust Co., 318 U.S. at 367, 63 S.Ct. at 575; accord United States v. Little Lake Misere Land Co., 412 U.S. 580, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973).

In United States v. Kimbell Foods, Inc., 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), the Supreme Court further refined

the process the court should use in determining what law applies:

[1] [F]ederal programs that 'by their nature are and must be uniform in character throughout the Nation' necessitate formulation of controlling federal rules.... Conversely, when there is little need for a nationally uniform body of law, state law may be incorporated as the federal rule of decision. [2] Apart from considerations of uniformity, we must also determine whether application of state law would frustrate specific objectives of the federal programs. If so, we must fashion special rules solicitous of those federal interests. [3] Finally, our choice-of-law inquiry must consider the extent to which application of a federal rule would disrupt commercial relationships predicated on state law.

*Id.* at 728–29, 99 S.Ct. at 1458–59 (citations and footnotes omitted).

The merger rule Virginia recognizes is a distinct minority position in the United States. Most other states have abrogated the common law rule by statute, either entirely or for most situations. *See* Restatement (Second) of Contracts § 292 (1981); *see also* 46 Am.Jur.2d *Judgments* § 544 (1969). The partners would have the court follow Virginia law and hold that no claim remains against the partners. On the other hand, under the majority rule regarding merger there would be no question that the government could maintain a subsequent suit against the partners. *See e.g., Taylor v. Brodt,* 90 Misc.2d 793, 396 N.Y.S.2d 143 (1977).

With the opposite results that the majority and minority rules would produce in mind, the court applies the *Kimbell* test and makes the following findings: (1) In this case, the government seeks to enforce its rights under a program the national scope of which Congress expressly defined:

It is the purpose of this chapter to— ... (m) wherever necessary, exercise the full reach of Federal constitutional powers to insure the protection of the public interest through effective control of surface coal mining operations.

30 U.S.C.A. § 1202(m) (West 1986). Since this case has been sporadically litigated for most of the last decade, the court feels that the requisite "necessity" is present here so as to make the language quoted above applicable. (2) Application of Virginia's rules regarding merger would "frustrate[ ] specific objectives of [a] federal program;" i.e., the government would be frustrated in its efforts to collect funds properly payable to the Abandoned Mine Reclamation Fund. *See* 30 U.S.C.A. § 1231 (West 1986). (3) Since the partners used a partnership (a "commercial relationship[ ] based on state law") to operate their coal mining business, they were not shielded from personal liability for the debts of the business. *Hoover v. Bowers, Hoover & Co.,* 146 Va. 84, 90, 135 S.E. 698, 699 (1926) (quoting *Francis v. McNeal,* 228 U.S. 695, 699, 33 S.Ct. 701, 702, 57 L.Ed. 1029 (1913) (Holmes, J.)). Thus, there will be no disruption of this commercial relationship if the partners ultimately pay the debts of the partnership.

Based on the foregoing analysis, the court adopts the majority rule regarding merger as the federal rule of decision. Applying the federal rule of decision, the court holds that the government's claim did not merge with the judgment it received against Ringley and Mancuso Coal Producers. The government's action against the partners is thus properly before the court.

### 3. The government is allowed to split its claim here.

As with most rules of law, there are exceptions to the rule that a claim merges into a judgment:

(1) When any of the following circumstances exists, the general rule of § 24 [regarding the effect of merger] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

\*  \*  \*  \*  \*  \*

(d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim....

Restatement (Second) of Judgments § 26(d) (1982).

The first clause of § 26(d) addresses fairness and equity. The court notes that the partners' argument for merger contradicts itself. When the government sought to collect money from the partners based on the judgment against the partnership, the partners protested because they were not named in the judgment against the partnership. Now that the government is seeking a judgment that names the partners, they say that the government's claim against *them* merged into the judgment against the partnership. In essence, the partners want to be one and the same as the partnership for purposes of the merger rule, but separate from the partnership for purposes of collection on the judgment against the partnership.

The partners could have created a corporation to carry out their coal mining business. The partners, for whatever reason, instead chose to use a partnership, and thus became personally and primarily liable for the debts of the partnership. *Hoover,* 146 Va. at 90, 135 S.E. at 699. Both of the partners received personal service (as "registered agents" of Ringley and Mancuso Coal Producers) when the government commenced the action that led to the judgment against the partnership. And, finally, the partners never objected to their nonjoinder as individual defendants during the pendency of the original action, which in some courts appears to be a waiver of the right to raise such a defense. 59A Am.Jur.2d *Partnership* § 715 (1987).

Given these facts and the command that "the doctrine of merger may be carried no further than the ends of justice require," *Letcher County v. De Foe,* 151 F.2d 987, 991 (6th Cir.1945); 46 Am.Jur.2d *Judgments* § 382 (1969), the court believes it would be inequitable for the partners to elude payment of the reclamation fees based upon their merger argument.

Under the second clause of § 26(d), the partners' argument fails if "the sense of the [statutory] scheme" permits the government to split its cause of action. The Act provides that "any portion of the reclamation fee ... shall be recoverable ... from coal mine operators...." 30 U.S.C.A. § 1232(e) (West 1986). The Act defines "operator" as "any person, partnership, or corporation engaged in coal mining...." *Id.* at § 1291(13). Also, as pointed out above, the statute authorizes "the full reach of Federal constitutional powers to insure the protection of the public interest."

In interpreting this language, "it is the court's task to 'interpret the words of [the statute] in light of the purposes [the Legislature] sought to serve' ... and to arrive at a construction which is 'most harmonious' with the statutory scheme and general purpose....'" *United Hosp. Center v. Richardson,* 757 F.2d 1445 1451 (4th Cir.1985) (bracketed material in original) (citations omitted). Moreover, the Act is clearly a remedial statute. *See* 30 U.S.C.A. § 1202(e) (West 1986) (one of Act's purposes is to "assure that adequate procedures are undertaken to reclaim surface areas as contemporaneously as possible with surface coal mining operations"). As a remedial statute, the court must liberally construe the Act. *Stevens v. Abbott, Proctor & Paine,* 288 F.Supp. 836 (E.D.Va. 1968).

The Act uses the disjunctive "or" in its definition of "operator": "person, partnership *or* corporation." "Normally, use of a disjunctive indicates alternatives and requires they be treated separately unless such a construction renders the provision repugnant to the [statute]." *George Hyman Constr. Co. v. Occupational Safety & Health Review Comm.,* 582 F.2d 834, 840 n. 10 (4th Cir.1978). Congress' use of the disjunctive at this crucial point, as well as the broad net Congress obviously intended for the Act, leads the court to the belief that "the sense of the scheme" permits the government to split its cause of action. Thus, the government's claim against the partners still exists and is properly before the court.

#### B. *Failure to State a Claim*

The partners point out that Ringley & Mancuso Coal Producers, a general partnership, operated the coal mines out of

which the reclamation fees at issue grew. They then note that the definition of "operator" includes "partnership," but not "partner." From these facts the partners argue that they cannot be liable for the reclamation fees because they were not "operators" for purposes of the statute. Thus, the partners allege that the government has failed to state a claim upon which relief can be granted.

Before the court can grant the partners' motion on this ground, it must appear beyond doubt that the government can prove no set of facts in support of the claim that would entitle the government to relief. *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir.1978) *cert. denied* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979); *Swiatlowski v. State Farm Mut. Auto. Ins. Co.*, 585 F.Supp. 965 (W.D.Va.1984). As noted earlier, it is a virtual axiom of partnership law that partners are personally and primarily liable for the debts of the partnership. This point of law alone shows that *Hudspeth*'s "beyond doubt" standard is not met in this case. Further, while the definition of "operator" concededly does not contain the word "partner," it does include the word "person." Finally, the court also has noted that it must interpret the Act in light of what Congress sought to achieve in passing the law. Based on all this, to accept the partners' argument would ignore partnership law and turn the statute on its head. The court declines to do so. This ground of the partners' argument for summary judgment is without merit.

### C. *Discharge In Bankruptcy*

■ Both of the partners have received discharges in Chapter 7 bankruptcy proceedings. These discharges encompass the period when the reclamation fees at issue became payable to the government. From these facts, the partners begin with the same erroneous argument they made above: The partners cannot be personally liable for the reclamation fees because they were not "operators." Hence, the reclamation fees were only assessable against the *partnership* as a partnership debt, and the

partners' bankruptcy discharges wiped out all partnership debts the partners owed.

■ Since the court has already found that the partners themselves are liable as "operators" for the reclamation fees, the only issue is whether the reclamation fees survived the partners' bankruptcy discharges. Abandoned mine land reclamation fees are not discharged by an individual debtor in bankruptcy if a Coal Production and Reclamation Fee Report was last due after three years before the date of the filing of the bankruptcy petition. *See* 11 U.S.C.A. §§ 523(a)(1)(A) and 507(a)(7) (West Supp.1990); *United States v. River Coal Co., Inc.*, 748 F.2d 1103, 1106 (6th Cir. 1984); *In re Sunset Enterprises, Inc.*, 49 B.R. 296, 297–98 (Bkrtcy.W.D.Va.1985). The Fee Reports in this case were due by or before August 1, 1979, but were filed on March 18, 1980, after a reclamation fee compliance audit. The partners filed petitions in bankruptcy on September 1, 1981, well within the three-year limit described above. Thus, the court finds that this ground of the partners' argument for summary judgment is without merit.

### D. *Statute of Limitations*

■ The partners argue that the federal six-year limitation period for actions on contracts applies here. 28 U.S.C.A. § 2415 (West Supp.1990). As noted above, this court has previously held that the payment of the reclamation fees if "not a contractual situation." *E & C Coal Co., Inc.*, 647 F.Supp. at 273. In the same case, this court held that "the government is not bound by any limitation period in collecting reclamation fees pursuant to 30 U.S.C. § 1232." *Id.* at 274. The court finds that this ground of the partners' argument for summary judgment is without merit.

### E. *Collateral Estoppel*

■ The partners argue that the collateral estoppel effect of the original judgment precludes litigation in this court. Since the government "won" in the original action (i.e., the issues were resolved in the government's favor), the court notes initially that the partners' reliance on collateral

estoppel appears odd. However, the court need not explore the nuances of this ground of the partners' argument. This is because collateral estoppel may be used only "[w]hen an issue of fact or law is *actually litigated* and determined by a valid and final judgment...." Restatement (Second) of Judgments § 27 (1982) (emphasis added); *accord Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Swentek v. USAIR*, 830 F.2d 552, 561 (4th Cir. 1987).

The court rendered judgment for the government in the original action because of the partnership's default (i.e., failing to appear on the day set for trial). A default judgment cannot be used for collateral estoppel purposes, because no issues are "actually litigated." Restatement (Second) of Judgments § 27 comment e. The court finds that this ground of the partners' argument for summary judgment is without merit.

## II. THE GOVERNMENT'S GROUNDS FOR SUMMARY JUDGMENT

█ In support of its motion for summary judgment, the government has submitted the affidavit of a federal reclamation fee collector and sworn copies of Coal Production and Reclamation Fee Reports signed by James Manicure, one of the partners. Further, the partners admit in their answer that they were general partners of Ringley and Mancuso Coal Operators. While the partners' answer to the government's complaint conclusorily addresses the merits of the government's suit by denying that the partners "operated surface coal mining and reclamation operations subject to the Act," the partners in their cross-motion for summary judgment do not provide any affidavits or other evidence to challenge the merits of the government's suit. Thus, the court concludes that summary judgment for the government is appropriate, in that no genuine issue as to a material fact exists regarding the partners' liability for the reclamation fees. *See* Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

## CONCLUSION

Based on the facts, analyses, and conclusions described above, the court grants the government's motion for summary judgment. The court will enter an appropriate Order.

## ORDER

In accordance with a Memorandum Opinion entered this day, judgment is granted to the plaintiff in the sum of ELEVEN THOUSAND, EIGHT HUNDRED EIGHTY SIX DOLLARS AND FIFTY FOUR CENTS ($11,886.54), plus prejudgment interest at the rate of one percent per month, commencing thirty days after each calendar quarter for which reclamation fees were due and the costs of this proceeding and postjudgment interest as allowed by law from the date of this Order, for which execution shall issue. The defendants' motion for summary judgment is denied.

ENTER: This 1st day of November, 1990.