UNITED STATES of America, Plaintiff,

v.

RAPOCA ENERGY COMPANY, Defendant.

**Civ. A. No. 89-0035-A.**

United States District Court, W.D. Virginia, Abingdon Division.

Nov. 7, 1990.

**22.** Defendant's Memorandum, Exhibit C at 2–3; Exhibit D at 2 (plaintiff's statements).

Mark Siegel, Sp. Asst. U.S. Atty., Knoxville, Tenn., John P. Alderman, U.S. Atty., Roanoke, Va., for plaintiff.

Mary Lynn Tate, Abingdon, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

The United States of America brought this action at the request of the Secretary of the Interior (hereinafter "the Secretary"), to recover abandoned mine reclamation fees under the provisions of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. Section 1201 *et seq.* (hereinafter "the Act"), and the implementing regulations. Jurisdiction of the court is pursuant to 30 U.S.C. Section 1232(e) and 28 U.S.C. Section 1345. Both parties have filed motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## I.

Defendant, Rapoca Energy Company (hereinafter "Rapoca"), conducted surface coal mining and reclamation operations subject to the Act and commercially produced coal in Buchanan, Dickenson and Wise Counties, Virginia. Rapoca produced coal during the third and fourth calendar quarters of 1982 and during all calendar quarters of 1983, 1984, 1985 and 1986.

Section 402(a) of the Act, 30 U.S.C. Section 1232(a), requires all coal mine operators subject to the provisions of the Act to pay to the Secretary a reclamation fee of thirty-five cents per ton of coal produced by surface coal mining. Rapoca calculated this fee on the basis of "clean coal" and paid that sum to the Secretary. Plaintiff alleges that the calculations should have been made on the basis of "raw coal" and that, therefore, Rapoca did not pay the appropriate reclamation fee within thirty days following the conclusion of each of the calendar quarters. Plaintiff claims that, after crediting the amounts paid, Rapoca still owes the Secretary the sum of $26,391.78 in delinquent reclamation fees, plus pre-judgment interest, late-payment penalties and administrative costs.

The Office of Surface Mining, United States Department of the Interior (hereinafter "OSM"), conducted a reclamation fee compliance audit of Rapoca's Blackwatch Division for the period from July 1, 1982 to December 31, 1986 and of its Nora Division for the period from January 1, 1983 to December 31, 1986. In its audit report dated April 1, 1988, OSM stated, *inter alia,* that Rapoca did not compute its reclamation fees on the "actual gross weight" of the coal "prior to [its] sale or transfer" as required under 30 C.F.R. Section 870.12. In one instance, the report contends that during a period when Rapoca's cleaning operation was temporarily suspended it computed its fees on the basis of the "clean coal" on which "Rapoca was paid" rather than on the "raw coal transferred". In another instance, the report asserts that Rapoca "calculate[d] the clean tonnage by multiplying raw production by an estimate of the percentage recovered during the

preparation process." The amounts calculated by Rapoca, according to the report, "do not represent the actual amounts sold." The report claims that the gross weight of the amounts sold should have been the basis of the reclamation fees. It is these two instances to which Rapoca objects and which form the basis of Plaintiff's claim that Rapoca owes delinquent reclamation fees. As previously stated, plaintiff filed a motion for summary judgment, but Rapoca filed a cross-motion for summary judgment only on the first instance concerning the time when its cleaning operation was suspended.

During the last quarter of 1984 and the first three quarters of 1985, Rapoca temporarily suspended its preparation and cleaning operations. Rapoca shipped its "raw coal" to its customers' cleaning facilities. The customers then cleaned the coal and paid Rapoca on the basis of "clean coal" although the records reflect that the amount of "clean coal" was only an estimation. In an affidavit submitted by Rapoca from Tom Wells, comptroller of Rapoca, Wells stated that during the period when Rapoca temporarily suspended its cleaning operations, "Rapoca determined the actual weight of the coal for which it was paid after cleaning based on a comparison of its coal sampling, daily weigh reports, coal purchase recap sheets and invoices or paid receipts from the customer. Based on this analysis, Rapoca was reasonably confident of the quality and nature of the coal it sold to its customers after cleaning because the clean tons arrived at and paid for by these customers was consistent with the quality of coal Rapoca knew each of the subject mines should be producing at that time." He further indicated that it was not the

practice in the industry to record the "actual" weights at a customer's coal cleaning facility. This affidavit and the records show that Rapoca does not have documents that actually reflect the amounts of coal remaining after its customers cleaned the "raw coal" shipped to them by Rapoca. Rather, Rapoca and its customers used various items of data such as those outlined by Wells in his affidavit to calculate rather than actually weighing the tons of "clean coal" upon which Rapoca received payment. This sequence of events comprise the first instance outlined in the audit report.

The facts of the second instance in the audit report entail Rapoca's calculating clean tonnage by multiplying its raw production times an estimate of the percentage of impurities recovered during the cleaning process. Simply stated, Rapoca was cleaning its own coal and subtracting from its clean tonnage the amount of moisture it estimated to be added to the coal during the cleaning operation. Rapoca then calculated its reclamation fees based on this revised tonnage of "clean coal".

The court finds that all of these recited facts are material and not in dispute. Under Rule 56, summary judgment is appropriate when there are no genuine issues of fact. *See* Moore's Federal Practice Section 56.04 at 56–60 (2d ed. 1990). For the reasons articulated below, the court grants summary judgment for the plaintiff.

## II.

The controversy involving the coal mined by Rapoca when its cleaning operations were suspended concerns 30 C.F.R. Section 870.12.[1] This section provides that the rec-

---

1. Section 870.12 Reclamation fee.

(a) The operator shall pay a reclamation fee on each ton of coal produced for sale, transfer, or use, including the products of in situ mining.

(b) The fee shall be determined by the weight and value at the time of initial bona fide sale, transfer of ownership, or use by the operator.

(1) The initial bona fide sale, transfer of ownership, or use shall be determined by the first transaction or use of the coal by the operator immediately after it is severed, or removed from a reclaimed coal refuse deposit.

(2) The value of the coal shall be determined F.O.B. mine.

(3) The weight of each ton shall be determined by the actual gross weight of the coal.

(i) Impurities that have not been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator, excluding excess moisture for which a reduction has been taken pursuant to Section 870.18, shall not be deducted from the gross weight.

(ii) Operators selling coal on a clean coal basis shall retain records that show run-of-mine

lamation fee to be paid by the operator "shall be determined by the weight and value at the time of initial bona fide sale, transfer of ownership, or use by the operator." According to the section, "[t]he initial bona fide sale, transfer of ownership, or use shall be determined by the first transaction or use of the coal by the operator immediately after it is severed...." In calculating the weight of each ton, the "actual gross weight" is to be used and "[i]mpurities that have not been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator ... shall not be deducted from the gross weight."[2] The issue to be determined on this tonnage dispute turns upon the "time of initial bona fide sale".

 Rapoca contends that the "initial bona fide sale" did not occur until its customers cleaned the "raw coal" and paid it for that coal. Plaintiff argues that since Rapoca had no written agreements with its customers about the passing of title and the time of sale and since Rapoca shipped "raw coal" to its customers and had no documents of the actual weight of the coal after it was cleaned, the "initial bona fide sale" occurred when Rapoca transported the "raw coal" to its customers. Rapoca contends that plaintiff's interpretation of the regulations is strained and ridiculous.[3]

The Surface Mining Control and Reclamation Act of 1977 and the implementing regulations do not define the "time of initial bona fide sale". Therefore, the court finds it necessary to look to the Uniform Commercial Code regarding sales and the passing of title.[4] Virginia Code Section 8.2–401(2) provides that "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods...." A sale occurs upon the "passing of title from the seller to the buyer for a price." Va.Code Section 8.2–106(1). "Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are 'future' goods." Va.Code Section 8.2–105(2). Finally, Section 8.2–501(1)(b) states that unless there is an explicit agreement between the parties, identification occurs "if the contract is for the sale of future goods ...," which the coal in this case would have been, "when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers." If any of the coal in this case was already existing and identified, identification occurred when the contract was made. Va. Code Section 8.2–501(1)(a).

During the time when Rapoca's cleaning operations were suspended, Rapoca shipped its "raw coal" to its customers. The customers then cleaned the coal, and Rapoca and the customers used various items of

tonnage, and the basis for the clean coal transaction.
 (iii) Insufficient records shall subject the operator to fees based on raw tonnage data.
 (c) If the operator combines surface mined coal, including reclaimed coal, with underground mined coal before the coal is weighed for fee purposes, the higher reclamation fee shall apply, unless the operator can substantiate the amount of coal produced by surface mining by acceptable engineering calculations or other reports which the Director may require.

2. This section allows a reduction for excess moisture under Section 870.18 for coal produced after July 1, 1988. All of the coal in dispute in this case was produced before January 1, 1987 so this deduction has no applicability in this case.

3. To the extent that Rapoca, in a letter dated November 1, 1990, challenges the validity of the regulation, 30 C.F.R. Section 870.12, the Fourth Circuit Court of Appeals has held that the United States District Court for the District of Columbia has exclusive jurisdiction under 30 U.S.C. Section 1276(a)(1) for such a challenge. *See Commonwealth v. Watt,* 741 F.2d 37 (4th Cir.1984) *cert. granted,* 469 U.S. 979, 105 S.Ct. 379, 83 L.Ed.2d 315 (1984), *cert. dismissed,* 469 U.S. 1198, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985). *Tug Valley Recovery Center v. Watt,* 703 F.2d 796 (4th Cir.1983).

4. The United States is in this court attempting to enforce a right granted under federal law. Thus, this court is exercising its federal question jurisdiction under 28 U.S.C. Section 1331. *See United States v. Ringley,* 750 F.Supp. 750 (W.D. Va.1990). The Uniform Commercial Code, as adopted by Virginia, contains the majority position on the law of sales. Therefore, the court adopts the Virginia law as the federal rule of decision on this issue.

data to calculate the amount owed to Rapoca. There is no evidence that the customers kept Rapoca's coal separate from coal received from other sellers nor did Rapoca maintain any documents of the actual weight, as opposed to an estimated weight, of the "clean coal." The arrangement that Rapoca and its customers had for determining the amount owed to Rapoca was only the method of payment and did not alter the fact that when Rapoca loaded its coal on trucks or other means of transportation the coal was identified to the contract and title passed because Rapoca had completed physical delivery of the goods. Va.Code Sections 8.2–501(1)(b) and 8.2–401(2). Rapoca was not shipping this coal to its customers for the purpose of cleaning but for the purpose of selling the coal to the customers. Thus, it was at this moment that the "initial bona fide sale" occurred. The fact that Rapoca was paid on some basis other than the tons of actual "raw coal" shipped does not change this conclusion. The customer owned all the coal including the impurities. Under 30 C.F.R. Section 870.12, the "actual gross weight" includes the "impurities that have not been removed prior to the time of initial bona fide sale."

Relying upon the decision in *City of Richmond v. Petroleum Marketers, Inc.*, 221 Va. 372, 269 S.E.2d 389 (1980), Rapoca argues that the coal could not be identified until it was cleaned and that therefore the "time of the initial bona fide sale" was after the coal was cleaned. The question in *Petroleum Marketers* was whether the defendant's "sales" occurred in Henrico County where the contracts for the purchase of oil were executed or in the City of Richmond where the oil was delivered. The court concluded that for the purpose of a "sale" title passed when the oil was pumped out of Petroleum's tanks into its customer's facility. At that time, a certain quantity of oil was separated from the larger mass of oil and identified to a particular contract. Contrary to Rapoca's argument, identification occurred in this case when Rapoca separated a quantity of coal from all the coal it mined and shipped that coal to a particular customer. Identification did not occur when the particular customer cleaned the coal and removed impurities.

Therefore, the court finds that the "initial bona fide sale" transpired when Rapoca shipped its "raw coal" to its customers and not when the customer cleaned that coal. Section 870.12(b)(1) says the "initial bona fide sale ... shall be determined by the first transaction ... by the operator after it is severed...." The first transaction here was the shipping of coal to a particular customer. At that time identification occurred. Va.Code Section 8.2–501(1)(b). A sale occurs when title passes, and title passed in this case when Rapoca completed physical delivery of the coal. Va.Code Sections 8.2–106(1) and 8.2–401(2). This finding is further supported by the provisions of 30 C.F.R. Section 870.12(b)(3)(ii) which states that "[o]perators selling coal on a clean coal basis shall retain records that show run-of-mine tonnage,[5] and the basis for the clean coal transactions." Section 870.12(b)(3)(iii) also provides that "[i]nsufficient records shall subject the operator to fees based on raw tonnage data."

### III.

■ The final issue is Rapoca's attempt to deduct from the "actual gross weight" moisture added during the cleaning process. This issue has been decided in *Drummond Coal Co. v. Hodel*, 796 F.2d 503 (D.C.Cir.1986). In this case, Drummond sought to deduct for excess moisture attributable to post-excavation rainfall and washing in calculating its reclamation fees. The court held that the regulation 30 C.F.R. Section 870.12 was not unreasonable and that Drummond could not make this deduction. For the same reasons enunciated in *Drummond,* Rapoca cannot deduct for excess moisture added during the clean-

---

5. In a letter to the court dated November 1, 1990, Rapoca argued that the records it retained and presented to the court showed run-of-mine tonnage. No such records are contained in the materials submitted to the court with the summary judgment motions. The court cannot base its decision regarding summary judgment on items that are only referred to but never provided to the court.

ing process and must pay reclamation fees based on the "actual gross weight" under 30 C.F.R. Section 870.12.

### IV.

For these reasons, the court grants summary judgment for the plaintiff on all issues except the amount of the reclamation fees to be paid by Rapoca. An appropriate judgment and order shall be entered this day.