**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sam F. KENNEDY, d/b/a Energy Salvage Company, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sam KENNEDY, Individually and d/b/a Energy Salvage Company, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sam KENNEDY, d/b/a Energy Salvage Company, Defendant-Appellant.
(Two Cases)**

Nos. 84–1629, 84–1630, 84–2084, 84–2085.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 27, 1985.

Decided April 8, 1985 *.

Duane D. Young, Costello, Long & Young, Springfield, Ill., for defendant-appellant.

---

* Pursuant to Circuit Rule 35, this opinion was originally issued as an unpublished order on April 8, 1985. The court has subsequently decided that the order be published as an opinion.

Robert T. Coleman, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before ESCHBACH and FLAUM, Circuit Judges, and DOYLE, Senior District Judge.**

PER CURIAM.

The Department of Interior (Department) instituted these two enforcement actions against appellant-Kennedy to collect certain fees and a fine levied under authority of the Surface Mining Control and Reclamation Act (SMCRA). The parties stipulated below to disposition by the magistrate, who ruled in the Department's favor after a bench trial. Kennedys' sole contention on appeal is that the SMCRA does not apply to his activities, and hence the Department lacked authority to regulate his conduct. Assuming he was engaged in "surface coal mining operations" within the meaning of the SMCRA, Kennedy does not dispute the validity of the judgments below. We affirm.

### Factual Background

The facts are undisputed. In 1975 Kennedy bought a piece of property containing an abandoned coal mine and some old buildings. The former coal operation had generated considerable refuse that remained on the premises, some of which was heaped in two large "gob piles" and the rest of which was located behind five retaining walls. The refuse material fit the technical definition of coal, since it contained more than fifty percent carbonaceous material.

Kennedy intended to reclaim the land in order to construct a shopping center. Over several years, he removed coal refuse located behind the retaining walls and sold it to a power company. Kennedy removed the refuse by loading it onto trucks, using standard earthmoving equipment; he never dug below the ground surface to obtain coal.

** Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin, is

In 1979 a Department inspector appeared at the property to examine Kennedy's operation. He was refused admission to the site, and consequently the Department assessed a fine of $2000 against Kennedy. The Department also assessed against Kennedy reclamation fees under the SMCRA totaling $39,000. The Department arrived at the amount based on the tonnage records of the power company that purchased the material from Kennedy. Kennedy neither contested the assessments administratively nor paid the fine or fees.

### Discussion

The narrow question presented is whether the mere removal of coal from refuse piles, when no below-surface activity occurs, constitutes a "surface coal mining operation" under the SMCRA. If it does, then Kennedy is liable for the fees and fine; if not, the Department is without authority to inspect or regulate his premises and the assessments are invalid. We agree with the magistrate's conclusion that Kennedy's activities were covered by the SMCRA.

The Act provides that "[a]ll operators of coal mining operations subject to the provisions of this Act shall pay to the Secretary of the Interior ... a reclamation fee of 35 cents per ton of coal produced by surface coal mining." 30 U.S.C. § 1232(a). The Act defines "surface coal mining operations" as:

> activities conducted on the surface of lands in connection with a surface coal mine.... Such activities include excavation for the purpose of obtaining coal including such common methods as contour, strip, auger, mountaintop removal, box cut, open pit, and area mining, the uses of explosives and blasting, and in situ distillation or retorting, leaching or other chemical or physical processing, and the cleaning, concentrating, or other processing or preparation, loading of coal

sitting by designation.

for interstate commerce at or near the mine site. . . .

30 U.S.C. § 1291(28).

Section 1278 of the Act specifically excludes three categories of activities from its application:

(1) the extraction of coal by a landowner for his own noncommercial use from land owned or leased by him;

(2) the extraction of coal for commercial purposes where the surface mining operation affects two acres or less; and

(3) the extraction of coal as an incidental part of Federal, State or local government-financed highway or other construction under regulations established by the regulatory authority.

30 U.S.C. § 1278.

In enacting the SMCRA, Congress explicitly directed the Secretary of the Interior to, "publish and promulgate such rules and regulations as may be necessary to carry out the purposes and provisions of this chapter ..." 30 U.S.C. § 1211(c)(2). Congress gave the Secretary ninety days from the enactment of the SMCRA to publish interim regulations setting forth performance standards and regulatory procedures to implement the Act; within one year the Secretary was to promulgate permanent regulations. Congress expressly required that both phases of rulemaking follow notice and comment procedures. 30 U.S.C. § 1251.

In the regulations issued to implement the SMCRA, the Secretary has considered consistently the reclaiming of coal from refuse piles to be surface mining under the Act. In the first set of regulations, promulgated in 1977, reclaimed coal was announced to be covered by the Act and subject to the reclamation fee; further, "reclaimed coal" was defined as "coal recovered from a deposit that is not in its original geologic location. Examples of these deposits are refuse piles or culm banks; refuse, culm or retaining dams and ponds that are or have been used during the mining or preparation process; and stream coal deposits." 42 Fed. Reg. 62715 (1977).

In 1979, amendments to the regulations clarified that "surface coal mining operations" included "extraction of coal from refuse piles." 44 Fed.Reg. 15315 (1979). Finally, in 1982 the regulations were again clarified to provide that "[r]eclaimed coal operations are considered to be surface coal mining operations for fee liability and calculation purposes." 47 Fed.Reg. 28594, codified as 30 C.F.R. § 870.5.

Kennedy's assertion that the 1982 regulations were the first to apply the Act to the removal of coal from refuse piles is plainly incorrect. The original 1977 rule, as well as all rules since then, put Kennedy on notice that the Department considered his activity to be surface mining under the SMCRA. Since, as Kennedy appears to concede, his activities clearly fall within the definition of surface mining activities used by the Department, he will escape liability only if the Department's regulations are inconsistent with the statute. Kennedy maintains the Act's definition of surface coal mining activities does not encompass the hauling of coal located in refuse piles. He contends implicitly that the Secretary's definition of surface mining activities exceeds the bounds of the statute.

The Department's implementation of the Act, through its regulations, is entitled to deference. That Congress explicitly bestowed rulemaking authority on the Secretary increases the deference due. *See* 2 K. Davis, *Administrative Law Treatise* § 7:8 (1979). The standard for review applicable here has been articulated:

Where the empowering provision of a statute states simply that the agency may "make ... such rules and regulations as may be necessary to carry out the provisions of this Act," we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is "reasonably related to the purposes of the enabling legislation."

*Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660–61, 36 L.Ed.2d 318 (1973) (citations omitted).

The federal reclamation fund was intended to "help correct the legacy from past coal mining," since "[h]istorically, the environmental effects of mining coal have been neglected upon the abandonment of the operation." H.R.Rep. No. 218, 95th Cong., 1st Sess. 134, 136, *reprinted in* 1977 U.S. Code Cong. & Ad.News 593, 666, 668. Congress' rationale in establishing the reclamation fee system was that "[t]he burden of paying for reclamation is rightfully assessed against the coal industry. The bill adopts the principle that the coal industry, and by extension the consumers of coal, must bear the responsibility for supporting special rehabilitation programs to recover and reclaim areas which have been severely impacted in the past by coal mining operations." *Id.* at 668.

We conclude that the Department's interpretation is reasonably related to the purposes of the SMCRA, and that it is consistent with the Act to assess reclamation fees for coal extraction activities like Kennedy's. That someone other than Kennedy initially extracted the coal refuse and then sold it to Kennedy is irrelevant. It would be unfair if mining the same coal were assessed doubly—i.e., if both Kennedy and the seller of the property had been assessed reclamation fees. But should Kennedy not be found liable for fees, the coal in question will have reached the marketplace having escaped any contribution to the federal reclamation fund. Hence Congress' intent to make the consumers of coal contribute, via coal operators, toward the reclamation effort would be thwarted. In determining the validity of the rules, we also find relevant that the first regulations were promulgated soon after the enactment of the legislation, and the construction has been adhered to consistently since. *See* Davis, *supra*, at § 7:14.

Kennedy contends that by omitting from its list of examples of surface mining operations such activities as removal of coal from refuse piles, the statute implicitly excluded Kennedy's conduct from its reach. We think Kennedy's reading is unduly narrow. First, although Congress did not explicitly include recovery of coal refuse in its list of covered activities, neither did it include such activity in its exceptions to the Act. 30 U.S.C. § 1278. Further, we think that in view of its broad purpose to generate reclamation funds by assessing fees against coal operators, Congress would not have created such an exception without articulation. We disagree that § 1291(28) of the Act is an inflexible list of covered activities, extending only to traditional excavation methods. We join company with the courts that have addressed this issue and have found the regulatory definition of surface mining activities valid under the Act. *United States v. H.G.D. & J. Min. Co., Inc.,* 561 F.Supp. 315 (S.D.W.Va.1983); *United States v. Devil's Hole, Inc.,* 548 F.Supp. 451 (E.D.Pa.1982).

The judgments of the district court are AFFIRMED.