UNITED STATES of America, Plaintiff,

v.

**SPRING RIDGE COAL COMPANY,**
Defendant.

**Civ. A. No. 91–0019–E.**

United States District Court,
N.D. West Virginia.

June 23, 1992.

Sandra E. Wartell, Jan U. Bellhy, Office of Sol., Pittsburgh, Pa., for plaintiff.

William W. Talbott, Webster Springs, W.Va., for defendant.

## ORDER

MAXWELL, Chief Judge.

Plaintiff instituted the above-styled civil action seeking to collect mine reclamation fees allegedly owed by Defendant pursuant to the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), 30 U.S.C. §§ 1201 *et seq.* (1986 & West Supp.1992). Specifically, Plaintiff claims Defendant underreported the amount of coal upon which such fees are due during the period of January 1, 1983 through December 31, 1988. Plaintiff has filed a Motion for Sum-mary Judgment to which Defendant responded on April 8, 1992. A reply was subsequently submitted. A review of the record in this matter demonstrates that this dispositive motion is ready for consideration by the Court.

Motions for summary judgment under Rule 56, Federal Rules of Civil Procedure, impose a difficult standard on the movant, for it must be obvious that no rational trier of fact could find for the non-moving party. *Miller v. FDIC,* 906 F.2d 972, 974 (4th Cir.1990). However, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). To withstand such a motion, the non-moving party must offer evidence from which "a fair-minded jury could return a verdict for the [party]." *Id.* Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. *Id.* at 248, 106 S.Ct. at 2510; *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

In its response, Defendant primarily contends that the expansive interpretation of SMCRA expounded by Plaintiff is inconsistent with the language and purposes of the statute. Defendant argues that regulations promulgated pursuant to SMCRA are overly-broad and contrary to the plain meaning of terms used in relevant statutory passages. Finally, it is argued that imposition of the fees may, in some circumstances, result in a double-imposition of the relevant fees.

Plaintiff's suit is premised upon 30 U.S.C. § 1232, which establishes a land reclamation fund for parcels of land damaged by coal mining operations. Subsection (a) of § 1232 requires all coal mining operators subject to SMCRA to pay reclamation fees of $0.35/ton of coal produced by surface mining and $0.15/ton of coal produced by underground mining. 30 U.S.C. § 1232(a) (1986). Accordingly to Plaintiff, Defendant

failed to report 204,908.24 tons of coal, resulting in nonpayment of $61,096.74, exclusive of interest and penalties. Pursuant to § 1232(e), Plaintiff has instituted this action to recover these fees.

■ To the extent that Defendant challenges the validity of the regulations promulgated by the Secretary of the Department of Interior pursuant to SMCRA, the Court absolutely agrees with Plaintiff that this Court is an inappropriate forum for such an argument. The statute provides, in pertinent part:

> Any action by the Secretary promulgating national rules or regulations including standards pursuant to sections 1251, 1265, 1266, and 1273 of this title shall be subject to judicial review in the United States District Court for the District of Columbia Circuit. Any other action constituting rulemaking by the Secretary shall be subject to judicial review only by the United States District Court for the District in which the surface coal mining operation is located.

30 U.S.C. § 1276(a) (1986). While there is some dispute regarding the scope of the language set forth above, the clear trend is to interpret this section as requiring that a challenge to national regulations such as those involved in the present action be brought only in the District of Columbia Circuit. *E.g. Amerikohl Min. Inc. v. United States,* 899 F.2d 1210 (Fed.Cir.1990) (challenge to assessment of reclamation fees must be instituted in the District of Columbia Circuit); *Drummond Coal Co. v. Watt,* 735 F.2d 469 (11th Cir.1984) (challenge to validity of the reclamation fees regulations must be brought in the District of Columbia Circuit); *contra Holmes Limestone Co. v. Andrus,* 655 F.2d 732 (6th Cir.1981), *cert. denied,* 456 U.S. 995, 102 S.Ct. 2280, 72 L.Ed.2d 1292 (1982) (jurisdiction of District of Columbia Circuit is non-exclusive). Moreover, the United States Court of Appeals for the Fourth Circuit has clearly adopted the view that national regulations promulgated under SMCRA are reviewable only in the District of Columbia Circuit. *Commonwealth of Va. ex rel. Va. Dept. of Conserv. v. Watt,* 741 F.2d 37 (4th Cir.1984) (attacks on administrative actions taken pursuant to regulations promulgated under SMCRA which constitute challenges to regulations themselves may be prosecuted only in the District of Columbia Circuit); *Tug Valley Recovery Center v. Watt,* 703 F.2d 796 (4th Cir.1983) (challenge to regulation which was alleged to be contrary to SMCRA provision should be pursued in the District of Columbia Circuit). Accordingly, this Court is without jurisdiction to consider Defendant's arguments concerning the validity of the applicable regulations and will limit its review to the applicability of these regulations to Defendant and its mining operations.

■ Plaintiff seeks to recover reclamation fees which are due, in part, on coal which was recovered from refuse heaps, or "gob piles." Defendant argues that this removal is not covered by SMCRA. Also, Defendant claims "that reclamation fees most likely were already paid on the product."

■ The $0.35/ton assessment under § 1232(a) is imposed upon "coal produced by surface coal mining...." The phrase "surface coal mining" is not defined in the statute, although § 1291(28) provides a definition of "surface coal mining operations" which includes:

(A) activities conducted on the surface of lands in connection with a surface coal mine or ... and surface impacts incident to an underground coal mine.... Such activities include excavation for the purpose of obtaining coal including such common methods as contour, strip, auger, mountaintop removal, box cut, open pit, and area mining ... and the cleaning, concentrating, or other processing or preparation, loading of coal for interstate commerce at or near the mine site ... and

(B) the areas upon which such activities occur or where such activities disturb the natural land surface. Such areas shall also include any adjacent land the use of which is incidental to any such activities ... and excavations, workings, impoundments, dams, ventilation shafts, entry-

ways, refuse banks, dumps, stockpiles, overburden piles, spoil banks, culm banks, tailings, holes or depressions, repair areas, storage areas, processing areas, shipping areas and other areas upon which are sited structures, facilities, or other property or materials on the surface, resulting from or incident to such activities....

30 U.S.C. § 1291(28) (1986). Additional guidance is provided by 30 C.F.R. § 700.5, the general definitional section of the regulations implementing SMCRA. While basically adopting the definition contained in § 1291(28), the regulation expressly states "that excavation for the purpose of obtaining coal includes extraction of coal from coal refuse piles...." One court has previously decided, correctly in the opinion of this Court, that the phrases "surface coal mining" and "surface coal mining operations" are interchangeable for the purposes of SMCRA. *United States v. Devil's Hole, Inc.*, 747 F.2d 895, 898 (3d Cir.1984).

The regulations implementing the mine reclamation fund further guide this Court's analysis. "Reclaimed coal" is defined as "coal recovered from a deposit that is not in its original geological location, such as refuse piles.... Reclaimed coal operations are considered to be surface coal mining operations for fee liability and calculation purposes." 30 C.F.R. § 870.5.

As the statutory and regulatory passages set forth above clearly demonstrate, removal and processing of coal from gob piles is considered to the surface coal mining subject to the $0.35/ton fee imposed by § 1232(a). The courts that have considered this issue agree. "[T]he mere removal of coal from refuse piles, when no below-surface activity occurs, constitutes a 'surface coal mining operation' under the SMCRA." *United States v. Kennedy*, 806 F.2d 111, 112–14 (7th Cir.1985). *See also United States v. Devil's Hole, Inc., supra; United States v. H.G.D. & J. Min. Co. Inc.*, 561 F.Supp. 315 (S.D.W.Va.1983) (dredging coal from a river constituted a "surface coal mining operation" subjecting defendant to reclamation fees under § 1232(a)). Accordingly, to the extent that removal of coal refuse from gob piles is attributable to

Defendant, reclamation fees of $0.35/ton are owed on that coal.

■ As a brief aside before examining whether the coal in question is fairly attributed to Defendant, the Court notes the Defendant raises legitimate concerns about the possibility of having the reclamation fee twice imposed upon the coal recovered from the gob piles. However, Plaintiff properly characterizes Defendant's arguments as speculation at this time. Additionally, the applicable regulation, 30 C.F.R. § 870.12(b), mandates that the fee be calculated upon the initial sale or transfer of the coal. Therefore, coal from the gob piles would not be assessed a reclamation fee until it had been cleaned, processed, and sold. Defendant's claims accordingly must be disregarded pending a showing that the mandated method of computation was not followed in the present case.

■ The final issue presented is whether Defendant is an "operator" subject to the reclamation fee provisions of § 1232. The relevant statutory definition is found at § 1291(13), which describes an "operator" as "any person, partnership, or corporation engaged in coal mining who removes or intends to remove more than two hundred and fifty tons of coal from the earth by coal mining within twelve consecutive calendar months in any one location...." 30 U.S.C. § 1291(13). An identical definition is codified at 30 C.F.R. § 701.5.

During the period in question, Defendant was a wholly-owned subsidiary of Jno McCall Coal Company. However, Defendant was purchased by its present owners, Michael Carpenter and Gary Roberts, on January 1, 1990. The contract of sale provided:

It is specifically understood that Seller [Jno McCall Coal Company] will indemnify and save Spring Ridge harmless for all claims or causes of action of whatever nature or which may have accrued or instituted as of December 31, 1989 except for reclamation, provided that Seller shall be responsible for and shall indemnify Buyer [Carpenter and Roberts] for

reclamation on the Bergoo # 2 Gob Pile. Seller shall control the defense and all settlement negotiations for matters that it shall indemnify Buyer, in whole or in part.

Jno McCall Coal Company subsequently filed for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code on September 7, 1990 and remains under the supervision of the Bankruptcy Court for the District of Maryland. Defendant attempted to institute a cross-claim based on this indemnity provision against Jno McCall Coal Company, which vigorously resisted this effort. Defendant informed the Court on May 8, 1992 that Jno McCall Coal Company has rejected this contract pursuant to the relevant Bankruptcy Code provision.

Further complicating the matter is the fact that, with the sole exception of the Beaver Run mine, the coal for which Plaintiff seeks to assess a fee was mined by independent mining companies under contract with Defendant. Defendant owned the mining permits for the sites and was also the leaseholder. Under these contracts, the mining companies mined the coal and, for a fixed price, delivered the coal to Defendant for processing and sale. The contracts also provided that the mining companies were responsible for paying "any state or federal reclamation, transportation of [sic] excise taxes...."

In support of its Motion, Plaintiff quotes extensively from the commentary which accompanied the passage and implementation of SMCRA. Without extensively reiterating these quotations, the Court understands the language to favor an expansive interpretation of § 1232 in order to further its broad remedial purpose. The Secretary has adopted, and Congress has approved, an interpretation of § 1232 which: 1) Imposes joint and several liability upon parties responsible for mining operations; 2) Favors collecting fees from the party which most directly benefits from the sale of coal; 3) Looks beyond the name or form of the business arrangement to determine the benefitted party; and 4) Disregards private arrangements concerning the payment of reclamation fees. Defendant has

not seriously challenged the interpretation advanced by Plaintiff.

In the most relevant decision regarding this issue, a company which contracted with forty-eight independent companies to mine its coal reserves was held ultimately liable for reclamation fund fees. *United States v. Rapoca Energy Co.*, 613 F.Supp. 1161 (W.D.Va.1985). The court used a seven-factor test derived from the analysis contained in the decision in *Parsons v. Smith*, 359 U.S. 215, 79 S.Ct. 656, 3 L.Ed.2d 747 (1959), to determine which entity, the leaseholder or contractor, held the true economic interest in the coal mining operations. *Rapoca Energy*, 613 F.Supp. at 1164–66. The test sought to impose liability on the party which held rights to the coal, rather than on the party which actually removed the coal. As stated by the court:

> the legislature intended that ultimate liability should rest with the entity that owns the right to extract the coal. Here, the 'independent contractors' owned no economic interest in the coal in place. Rather, they enjoyed a mere 'economic advantage' derived from production, through a contractual relation to the owner and were in fact no more than the tools by which Rapoca was able to extract its coal. Rapoca Energy Company is liable for payment of the reclamation fees.

*Id.* at 1167.

Plaintiff has set forth a lengthy, step-by-step application of the seven-factor test to the facts of this action. Defendant has not challenged the conclusions drawn by Plaintiff, and the Court does not consider it essential to repeat the analysis. The Court finds that the *Rapoca* analysis comports with the broad interpretation given the reclamation fund provisions of SMCRA. Defendant, rather than the companies which actually mined the coal, derived the greatest economic benefit from the coal mining operations. The companies mined the coal at a fixed rate per ton, turned the coal over to Defendant for processing and sale, and held no other interest in the coal. Their sole investment was their equipment.

Their compensation did not vary according to the market price for coal. The mining contracts were terminable without cause on thirty days' notice. It is clear that the mining companies operated as mere agents for Defendant.

This observation does not mean that the individual mining companies are not also liable for the reclamation fees. Under the plain language of the statute and the Secretary's policy of imposing joint and several liability, the companies which performed the actual mining operations would also appear to be "operators" under § 1232. *See also United States v. Helton,* C.A. 3:90–0008, 1991 WL 335446 (S.D.W.Va. July 3, 1991) (adopting the *Rapoca* analysis while recognizing that the plain language of the statute imposes liability on the actual remover of the coal). The Court, of course, does not decide this issue conclusively. This observation merely demonstrates the broad reach of SMCRA's remedial provisions and Plaintiff's right to look to Defendant for the reclamation fund fees.

■ Neither the indemnity provision contained in the contract of sale from Jno McCall Coal Company nor the provisions in the mining contracts providing for payment of reclamation fees insulates Defendant from liability. Jno McCall Coal Company is apparently not bound by its agreement. Even assuming that it is, the indemnity provision expressly excluded reclamation costs. Additionally, the Secretary has clearly rejected reliance upon the terms of private arrangements. Most importantly:

A reclamation fee is a tax. *United States v. Tri–No Enterprises, Inc.,* 819 F.2d 154, 159 (7th Cir.1987), and agreements by third-parties to pay the taxpayer's tax do not relieve the taxpayer of liability. *Jones v. Commissioner,* 306 F.2d 292 (5th Cir.1962). Therefore, the agreement between [Defendant] and the [other] parties does not relieve [Defendant] of its obligations.

*United States v. Fire Ring Fuels, Inc.,* 788 F.Supp. 326 (E.D.Ky.1991).

■ The fact that Defendant was, at the time of the mining operations in question, a wholly-owned subsidiary of a now-bankrupt corporation provides no shelter for Defendant. At the time of suit, Defendant was an independent entity. Nothing indicates that it should now inherit whatever shelter would be provided a subsidiary of a debtor corporation merely because the relevant events occurred while it was such a subsidiary. Accordingly, it is

ORDERED that Plaintiff's Motion for Summary Judgment be, and the same is hereby, GRANTED. Counsel for Plaintiff is hereby directed to prepare an appropriate judgment order reflecting the Court's ruling and assessing damages consistent therewith. Such order shall be approved as to form by counsel for defendant and submitted to the Court for entry not later than fourteen (14) days from the entry of this Order.