**SG COAL COMPANY, INCORPORATED**

v.

**Manual LUJAN, Jr.**

**Civ. A. No. 90–0150–A.**

United States District Court, W.D. Virginia, Abingdon Division.

Dec. 30, 1992.

---

David E. Cecil, Robertson, Cecil & King, Grundy, VA, Paul D. Kruper, Buchanan Ingersoll Professional Corp., Pittsburgh, PA, for plaintiff.

Mark Siegel, Sp. Asst. U.S. Atty., U.S. Dept. of Interior, Office of Sol., Knoxville, TN, for defendant.

## MEMORANDUM OPINION

WILSON, District Judge.

Under the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), a surface mine "operator" is required to pay a reclamation fee on mined coal. 30 U.S.C. § 1232. 30 C.F.R. § 870.12(b) provides that the fee is to be determined by the weight of the coal "at the time of initial bona fide sale, transfer of ownership, or use ... immediately after it is severed" from the ground.[1] SG Coal Company, Inc.

---

1. 30 C.F.R. § 870.12(b) provides in full:

The fee shall be determined by the weight and value at the time of initial bona fide sale, transfer of ownership, or use by the operator.

(1) The initial bona fide sale, transfer of ownership, or use shall be determined by the first transaction or use of the coal by the operator immediately after it is severed, or removed from a reclaimed coal refuse deposit.

("SG Coal") paid reclamation fees on a clean coal basis. The Office of Surface Mining ("OSM") reviewed SG Coal's production records and assessed SG Coal for additional tonnage on a raw coal basis. The assessment was upheld on administrative review, and SG Coal paid the full amount under protest. SG Coal then filed this action against Manuel Lujan, Jr., Secretary of the United States Department of the Interior ("Secretary"), claiming that it is not an operator subject to assessment, that it did not transfer raw coal, and that the Secretary's regulations permit it to sell raw coal on a clean coal basis so long as it maintains sufficient records. Jurisdiction is asserted pursuant to 5 U.S.C. §§ 701–05, 30 U.S.C. § 1270(a)(2), and 28 U.S.C. § 1331.

The Secretary contends that the Court lacks jurisdiction because of 30 U.S.C. § 1276(a)(1) which vests exclusive jurisdiction with the United States District Court for the District of Columbia over actions challenging the Secretary's regulations. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. The United States Magistrate Judge filed a report and recommendation, which concludes that the Court is not precluded from jurisdiction and which recommends judgment for SG Coal because SG Coal transferred ownership of clean, not raw, coal. Although the Court concludes that 30 U.S.C. § 1276(a)(1) does not preclude jurisdiction and adopts the report as to that issue, the Court declines to adopt the report as to the fee assessment issue and instead enters partial summary judgment for the Secretary on that issue.

## I.

Donald Nicewonder is the sole shareholder of Virginia Energy Company ("Va. Energy"), which was incorporated in 1974. Nicewonder also owns approximately 32% of the shares of SG Coal, and his family owns an additional 52%. SG Coal was formed in 1980 for the purpose of deep mining coal for Va. Energy, which had deep mine reserves but did not have the expertise to mine them.

The two companies entered into a lease agreement on January 1, 1983, in which Va. Energy gave SG Coal the "exclusive right" to deep mine coal on certain properties that Va. Energy had leased from Douglas Pocahontas Coal Corporation ("Douglas Pocahontas"). This was the only written agreement between SG Coal and Va. Energy, and Nicewonder testified at his deposition that the agreement governed the relationship between those companies. (Nicewonder Dep. at 19). The lease agreement provides in pertinent part:

> Nothing contained in this Agreement shall be interpreted as granting to [Va. Energy] any rights to acquire the coal produced by [SG Coal]. [Va. Energy] may from time to time acquire the coal produced by [SG Coal], but the negotiated price will depend upon the market conditions and the quality of the coal.

SG Coal hired independent contractors to mine coal on the leased properties. Between October 1, 1983, and September 30, 1989, SG Coal shipped all, or almost all, of the coal from those properties to Va. Energy, which then cleaned and sold the coal and paid SG Coal the sale price less the cost of cleaning. SG Coal, in turn, paid royalties to Douglas Pocahontas based on the sale price.

SG Coal and Va. Energy share the same mailing address, point of operations, and bookkeeping operations and have the same president, vice-president, and secretary-treasurer. At times, instead of paying SG Coal the exact amount due from the coal sales, Virginia Energy transferred operat-

(2) The value of the coal shall be determined F.O.B. mine.

(3) The weight of each ton shall be determined by the actual gross weight of the coal.

(i) Impurities that have not been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator, excluding excess moisture for which a reduc-tion has been taken to § 870.18, shall not be deducted from the gross weight.

(ii) Operators selling coal on a clean coal basis shall retain records that show run-of-mine tonnage, and the basis for the clean coal transaction.

(iii) Insufficient records shall subject the operator to fees based on raw tonnage data.

ing capital to SG Coal or merely paid an amount sufficient to keep SG Coal operating. However, the companies kept separate books that reflected the correct sales prices and unpaid balances, and each company filed its own federal income tax returns based upon its separate bookkeeping.

## II.

■ Initially, the Court addresses the Magistrate Judge's conclusion that the Court is not precluded from subject matter jurisdiction by 30 U.S.C. § 1276(a)(1), which provides in relevant part:

> Any action by the Secretary promulgating national rules or regulations including standards pursuant to sections 1251, 1265, 1266, and 1273 of this title shall be subject to judicial review in the United States District Court for the District of Columbia Circuit.

This language gives the District Court for the District of Columbia Circuit exclusive jurisdiction over challenges to the national rules and regulations promulgated under the SMCRA. *Tug Valley Recovery Center v. Watt*, 703 F.2d 796 (4th Cir.1983). As the Magistrate Judge correctly states, SG Coal's claim does not challenge the regulation but merely requires an interpretation of its language. As such, the Court finds that it is not precluded from entertaining this action by 30 U.S.C. § 1276(a)(1), *see United States v. S.S. (Joe) Burford, Inc.*, 761 F.2d 173 (4th Cir.1985); *United States v. Rapoca Energy Co.*, 751 F.Supp. 565 (W.D.Va.1990); *United States v. Rapoca Energy Co.*, 613 F.Supp. 1161 (W.D.Va. 1985), and that it has jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–05. *See Bowen v. Massachusetts*, 487 U.S. 879, 893–901, 108 S.Ct. 2722, 2731–35, 101 L.Ed.2d 749 (1988); *Ulmet v. United States*, 888 F.2d 1028, 1030 (4th Cir.1989).[2]

## III.

■ SG Coal contends that it was not an "operator" under the SMCRA. The Court disagrees. "[T]he SMCRA provides that

'[a]ll operators of coal mining operations' should pay fees to help reclaim mined lands." *U.S. v. Manning Coal Corp.*, 977 F.2d 117, 121 (4th Cir.1992) (quoting Section 402(a), 30 U.S.C. § 1232(a)). 30 U.S.C. § 1291(13) defines "operator" as "any person, partnership, or corporation engaged in coal mining who removes or intends to remove more than two hundred fifty tons of coal from the earth within twelve consecutive calendar months in any one location." As stated by the court of appeals, "The Department of the Interior has consistently interpreted 'operator' ... to include both mining contractors and landowners ... and has declared them to be jointly and severally liable for SMRCA reclamation fees." *Manning Coal Corp.*, 977 F.2d at 121. Having the exclusive right to mine coal from the Va. Energy properties, and having removed the coal from those properties pursuant to that right, SG Coal clearly meets the statutory definition of operator.

Citing *United States v. Rapoca Energy Co.*, 613 F.Supp. 1161 (W.D.Va.1985), SG Coal argues that it is not an operator because it acted solely as an agent of Va. Energy. That argument is based on a misreading of *Rapoca*. As one court has stated:

> [T]he *Rapoca* court intended *ultimate* liability for reclamation fees to lie with the owner of the right to extract. However, this does not preclude the assessment of liability to more than one operator.... *Rapoca* constitutes an extension of the definition of operator and not a replacement of the statutory definition. *Rapoca* does not prevent a finding that [a contract miner] meets the statutory definition of operator.

*United States v. Fire Ring Fuels, Inc.*, 788 F.Supp. 330, 331 (E.D.Ky.1992) (emphasis in the original). Likewise, after discussing *Rapoca*, the court in *United States v. Spring Ridge Coal Co.*, 793 F.Supp. 124 (N.D.W.Va.1992) observed:

> It is clear that the mining companies operated as mere agents for Defendant.

---

2. SG Coal also asserts jurisdiction under 30 U.S.C. § 1270(a)(2). That section confers jurisdiction over citizen suits only, not over suits by members of the regulated industry. *United States v. Gorman Fuel, Inc.*, 716 F.Supp. 991 (E.D.Ky.1989).

This observation does not mean that the individual mining companies are not also liable for the reclamation fees. Under the plain language of the statute and the Secretary's policy of imposing joint and several liability, the companies which performed the actual mining operations would also appear to be 'operators' under § 1232.

793 F.Supp. at 129. Thus, even if SG Coal was merely Va. Energy's agent, as SG Coal contends, it still could have been an "operator" under the SMCRA. Accordingly, for the reasons stated above, the Court finds that SG Coal met 1291(13)'s definition of "operator" and was subject to reclamation fee assessments.

## IV.

S.G. Coal has argued that its affairs were so intertwined with Va. Energy's that the two companies should be treated as one. For that reason, according to SG Coal, no sale occurred until Va. Energy cleaned the coal and sold it to third parties. The Magistrate Judge rejected that argument, finding instead that Va. Energy acted as a broker or commission merchant. In reaching that conclusion the Magistrate Judge viewed subsequent conduct of the parties as a waiver or modification of the relationship created by the written agreement. According to the Magistrate Judge, there was no sale or transfer of ownership until the coal was cleaned by Va. Energy and sold to third parties. However, under either theory, the one advanced by SG Coal or the one adopted by the Magistrate Judge, the Secretary's assessment would have been in error. The Court rejects the first theory as a matter of law but finds some plausibility to the second theory, although ambiguity concerning the matter precludes entry of summary judgment for SG Coal.

### A. The Alter Ego Theory

■ SG Coal and Va. Energy are incorporated separately and have filed separate tax returns. SG Coal is essentially asking the Court to treat the two corporations as one for reclamation fee purposes after taking advantage of its separateness in other respects. After having received the advantages of their separateness, they cannot now avoid the disadvantages.[3]

### B. The Broker or Commission Merchant Theory

■ Certain facts seem to preponderate in favor of the Secretary: SG Coal mined the coal pursuant to the lease agreement; SG Coal transferred possession of the raw coal to Va. Energy; and SG Coal had no other express written or oral agreements with Va. Energy. The case is not before the Court following a hearing on the merits, however. Rather, it is before the Court on motion for summary judgment. On that score, the record contains *some* ambiguity as to whether the parties' acts subsequent to the written lease agreement waived or modified the express terms of the lease agreement or were in performance of that agreement:

> Where it is difficult to determine whether a particular act merely sheds light on the meaning of the agreement or represents a waiver of a term of the agreement, the preference is in favor of waiver whenever such construction, plus the application of the provisions on the reinstatement of rights waived ... is needed to preserve the flexible character of commercial contracts and to prevent surprise or other hardship.

Va.Code Ann. § 8.2–208 comt. 3 (Michie 1991). As stated by the Court of Appeals for the Ninth Circuit, it is within the province of the trier of fact "to determine whether those acts were ambiguous, and if

**3.** *See National Carbide Corp. v. Commissioner,* 336 U.S. 422, 429, 69 S.Ct. 726, 730, 93 L.Ed. 779 (1949) ("[A] corporation formed or operated for business purposes must share the tax burden despite substantial identity, in practical operation, with its owner."); *Moline Properties, Inc. v. Commissioner,* 319 U.S. 436, 439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499 (1943) ("The choice of the advantages of incorporation to do business ...

require[s] the acceptance of the tax disadvantages."); *Collins v. United States,* 386 F.Supp. 17, 21 (S.D.Ga.1974), *aff'd,* 514 F.2d 1282 (5th Cir. 1975) ("A taxpayer cannot shop on both sides of the street at the same time. He cannot avail himself of the business advantages of the corporate form while disregarding it in the case of its tax disadvantages.").

not, whether they constituted waivers or a course of performance of the contract." *Nanakuli Paving & Rock Co. v. Shell Oil Co.,* 664 F.2d 772, 794 (9th Cir.1981). Accordingly, summary judgment based upon that issue would be inappropriate on the record before the Court.[4]

V.

■ Finally, SG Coal argues that the regional office of OSM misinterpreted the agency's regulations concerning the deduction of impurities from the coal in calculating reclamation fees. SG Coal asserts that 30 C.F.R. § 870.12(b)(3)(ii)[5] allows companies such as itself, which do not have cleaning facilities, to sell raw coal on a clean coal basis and, as long as sufficient records are maintained, pay reclamation fees for clean coal. SG Coal further asserts that other regions of OSM apply the regulation in such a manner.[6] The Court finds, however, that even if other regions have in fact interpreted the regulation as SG Coal suggests, such an interpretation was explicitly rejected by the agency in 56 Fed.Reg. 10,-404 (1991):

(B) Basis for Payment

Some of the concern regarding the calculation of [reclamation] fees has resulted from operators relying on the basis for payment, i.e. payment on a clean coal tonnage basis rather than on the actual gross weight of the coal at the time of initial bona fide sale, use, or transfer of ownership, as a means for determining fee liability. Such reliance is improper. The arrangement that a purchaser and a coal operator have for determining the amount owed is immaterial.... The [reclamation] fee is assessed on the actual gross weight of the material at the time of initial sale, transfer of owner-

ship, or use. Accordingly, if impurities have not been removed prior to the initial sale or transfer, they may not be deducted from actual gross weight used for [reclamation] fee purposes.

The agency's official interpretation is reasonable and is controlling here. *See Bowles v. Seminole Rock and Sand Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

VI.

For the foregoing reasons, the Secretary's motion to dismiss for lack of jurisdiction is denied. SG Coal's motion for summary judgment is denied, and partial summary judgment is entered for the Secretary on all remaining issues except the issue of whether terms of the written lease agreement were waived or modified resulting in a brokerage or commission merchant arrangement between SG Coal and Va. Energy.[7]

---

4. In resolving that ambiguity, how, for example, are coal transfers treated in SG Coal's corporate records? Do the records reflect sales to Va. Energy? Do the dates of those "sales" correspond to shipments of coal to Va. Energy or to third parties? If the Court receives uncontradicted evidence favoring the Secretary on those issues, then summary judgment would appear to be appropriate. Otherwise, an evidentiary hearing will be held.

5. *See* n. 1.

6. The only evidence SG Coal offers to support this assertion is the affidavit of a former auditor at OSM which states that he was told auditors in some other regions interpreted the regulation differently than those in SG Coal's region. This evidence is, at best, unreliable and is, at worst, inadmissable hearsay.

7. The Magistrate Judge reviewed all matters *de novo,* and neither of the parties objected to that standard of review. Accordingly, the Court assumes without deciding that the more liberal *de novo* standard applies.