Shirley MOLZOF, as personal representative of the Estate of Robert E. Molzof, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 92–3192.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1993.

Decided Sept. 29, 1993.

Virginia M. Antoine, Habush, Habush & Davis, Milwaukee, WI, Daniel A. Rottier (argued), Habush, Habush & Davis, Madison, WI, and Thomas H. Geyer, Kopp, McKichan, Geyer, Clare & Skemp, Platteville, WI, for plaintiff-appellant.

Richard D. Humphrey, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Madison, WI, for defendant-appellee.

Before BAUER, Chief Judge, CUDAHY and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiff brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, for, *inter alia*, future medical expenses. On remand from the Supreme Court to determine whether Wisconsin law permits the plaintiff to recover future medical expenses when the plaintiff is entitled to free medical care as a veteran, the district court held that, under Wisconsin law, future medical expenses can be awarded only if there has been a showing that the monies recovered would reasonably be expended on future care. Because the evidence indicated that the plaintiff would not seek care at another facility, but would remain at the Veteran's Administration (VA) hospital and receive his care free, the district court granted the government's motion for summary judgment and denied the award for future medical expenses. We reverse and remand with instructions.

## I.

Given our previous decision in this case, 911 F.2d 18 (7th Cir.1990), as well as that of the Supreme Court reversing, — U.S. —, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992), we will assume some knowledge of the underlying facts and will present only those necessary for a full understanding of the issue presented.

On October 31, 1986, Robert Molzof was recovering from surgery at the William S. Middleton Memorial Veterans Hospital in Madison, Wisconsin, when the staff negligently disconnected the alarm system on the ventilator to which he was attached. While the alarm was disconnected, the tube supplying oxygen to Mr. Molzof became disengaged. When these disconnections were dis-

covered approximately eight minutes later, Mr. Molzof was in complete cardiac arrest. He was not resuscitated for approximately a half hour. The oxygen deprivation left Mr. Molzof with irreversible brain damage, requiring a ventilator for breathing and a nasogastric tube for nutrition and hydration.

Mr. Molzof, through his guardian ad litem and later through his wife as personal representative of his estate,[1] brought this action against the United States under authority of the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (FTCA), for damages resulting from the employees' negligence. The United States admitted liability, and the case proceeded to a bench trial solely on the issue of damages.

At trial, the district court predicted the plaintiff's life expectancy to be three years from the date of trial and that future medical expenses would total approximately $1,280,-529. The district court found, however, that, given his service-connected disability, Molzof was entitled to free care from the VA hospital, that the care provided by the VA hospital was reasonable and adequate and that there was no evidence that the level of care provided at a private facility would equal that at the VA hospital. The court also concluded that the plaintiff's wife was reasonably well satisfied with the current services provided by the hospital and that she had no present intention of transferring him to a private facility. In light of these findings, the court ordered the continuation of care at the VA hospital and awarded future medical expenses only in the amount of $67,950, the amount necessary to supplement the care received at the VA hospital. The district court, relying on *Brooks v. United States*, 337 U.S. 49, 53, 69 S.Ct. 918, 920, 93 L.Ed. 1200 (1949), reasoned that, although future medical expenses totaled approximately $1,280,529, requiring the government to pay for medical services which it was already obligated to provide and which equaled or bettered the care the plaintiff would receive at a private facility would be punitive and thus prohibited by § 2674 of the FTCA.[2]

On appeal we affirmed, but the Supreme Court reversed. The Court held that the award of future medical expenses was not punitive because it was based on a simple negligence theory and did not depend on proof of intentional or egregious misconduct. The Court did not conclude, however, that the plaintiff was necessarily entitled to the full award of future medical expenses. Instead, it remanded the case because there was no finding that the damages were recoverable under Wisconsin law: "It may be that under Wisconsin law the damages sought in this case are not recoverable as compensatory damages. This might be true because Wisconsin law does not recognize such damages, or because it requires a setoff when a defendant already has paid (or agreed to pay) expenses incurred by the plaintiff, or for some other reason." —— U.S. at ——, 112 S.Ct. at 718.

On remand, the district court granted summary judgment in favor of the government. The district court held that, under Wisconsin law, the plaintiffs were not entitled to future medical expenses because "it ha[d] not been shown that any monies would have been reasonably and necessarily expended by plaintiff in the future for that care and treatment." *Molzof v. United States*, No. 88–C–904–S, Mem. and Order at 6 (W.D.Wis. July 16, 1992). It relied on Wisconsin Jury Instruction 1750A, which states that a jury should award future medical expenses in the amount that "will reasonably and necessarily be expended by plaintiff in the future for the care and treatment." Reviewing the record, the district court found no evidence that the Molzofs planned to leave the VA hospital for a private or other provider and noted that Mrs. Molzof generally had been satisfied with the care provided by the VA hospital. The plaintiff once again appeals.

---

1. Mr. Molzof died after the entry of final judgment in the district court but before filing of the notice of appeal to this court in the first round of litigation.

2. § 2674 provides in relevant part:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.
28 U.S.C. § 2674 (1988).

## II.

The factual findings of the district court not being disputed, our review is simply of the district court's determination of Wisconsin law, which we review *de novo.* *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The issue is whether Wisconsin law permits a plaintiff to recover his future medical expenses against the federal government, even though the plaintiff is entitled to free medical care from the government as a veteran with a service-connected injury.

Molzof argues that the district court misinterpreted Wisconsin law, and maintains that all that is necessary for a plaintiff to obtain future medical expenses under Wisconsin law is expert evidence establishing that the plaintiff requires future medical care and the reasonable costs of such treatment. *Bleyer v. Gross,* 19 Wis.2d 305, 120 N.W.2d 156 (1963).

We agree. "The general rule in Wisconsin has been that a plaintiff who has been injured by the tortious conduct of another is entitled to recover the reasonable value of his medical costs reasonably required by the injury.... Under this theory of recovery, the fact that necessary medical and nursing services are rendered gratuitously to one who is injured should not preclude the injured party from recovering the value of those services as part of his compensatory damages." *Thoreson v. Milwaukee & Suburban Transp. Co.,* 56 Wis.2d 231, 201 N.W.2d 745, 752 (1972). *See also McLaughlin v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 31 Wis.2d 378, 143 N.W.2d 32 (1966). Contrary to the approach followed by the district court, "Wisconsin has long been committed to the collateral-source rule," *Merz v. Old Republic Ins. Co.,* 53 Wis.2d 47, 191 N.W.2d 876, 879 (1971), which provides that "a personal injury claimant's recovery is not to be reduced by the amount of compensation received from other sources, i.e., sources 'collateral' to the defendant." *Lambert v.*

*Wrensch,* 135 Wis.2d 105, 399 N.W.2d 369, 372 n. 5 (1987). Consequently, the fact that an award of future medical expenses to Molzof may not be expended on medical care does not bar such an award under Wisconsin law.

The government argues, however, that it is nonetheless entitled to summary judgment because, even if Wisconsin's collateral source rule does not prevent the plaintiff from obtaining, in effect, a "double recovery," it does not permit both of those recoveries to come from the same source—the government. As it did in the prior round of litigation, the government principally relies upon *Brooks v. United States,* 337 U.S. at 53, 69 S.Ct. at 920, and its progeny for the proposition that Congress did not intend the United States to pay twice for the same injury, for "[i]t would seem incongruous at first glance that the United States should have to pay in tort for hospital expenses it had already paid...." *Id.*

As a threshold matter, we believe that *Brooks* is not controlling. In the present case, the Supreme Court decided, at least implicitly, that nothing under the FTCA or other provision of federal law prohibited the government from paying twice for future medical expenses. —— U.S. at ——, 112 S.Ct. at 717 (rejecting government's view that "duplicative damages would be 'punitive damages' because they have the effect of making the United States pay twice"). The Court concluded that awarding future expenses in the light of free care was not punitive. Whether such an award is permissible, the Court indicated, was a matter of state law. Thus, the issue with which we are confronted on remand is not what Congress intended, but rather whether *state law,* in particular, Wisconsin law, permits double payment.

As to the applicability of Wisconsin's collateral source rule, the government contends, albeit haphazardly,[3] that the rule does not

---

**3.** The government relied entirely on *Brooks* and its progeny in its brief in the present appeal. At oral argument, however, the government argued that the collateral source rule is inapplicable because the medical expenses will not be paid by a collateral source, and cited as authority the

Restatement of Torts. Counsel for the government explained that he believed that this authority was cited in the government's brief before the Supreme Court. Following oral argument, the government submitted copies of the section of its

permit the plaintiff to recover twice from the same defendant. It cites no cases (Wisconsin or otherwise), but relies on § 920A of the *Restatement (Second) of Torts,* which indicates that a double recovery is permissible "so long as they did not come from the defendant or a person acting for him." Restatement (Second) of Torts § 920A (comment b) (1977). In essence, the government argues that the collateral source rule does not apply because there is no collateral source.

Permitting the plaintiff to recover twice for the same injury pursuant to the collateral source rule is generally justified on the ground that the tortfeasor should not be permitted to reap the benefits of the plaintiff's foresight in obtaining coverage for future harm or his good fortune in obtaining compensation gratuitously. *Thoreson,* 201 N.W.2d at 752. In choosing who should receive the windfall from the "surplus" award, i.e., compensation over and above that necessary to compensate the plaintiff for the injuries sustained by the tortious conduct, the plaintiff is thought to be far more deserving than the defendant.

On the other hand, the rule has been held to be inapplicable when the double recovery comes from the same source. *Thomas v. Shelton,* 740 F.2d 478, 484–85 (7th Cir.1984) (Indiana law); *In re Air Crash Near Cerritos,* 982 F.2d 1271, 1277 (9th Cir.1992) (California law). After the victim has been compensated by the tortfeasor, it is thought that making the tortfeasor pay the victim a second time would result in overdeterrence and overcompensation. *Thomas,* 740 F.2d at 485. For example, when the tortfeasor makes advance payments toward a judgment to the victim, and the victim then attempts to recover the full amount of the judgment irrespective of the advance payments, there seems to be little justification for making the tortfeasor pay again for the same wrong, and doing so would ultimately deter tortfeasors from attempting informally to make amends for their actions.

■ Just because both recoveries come from the *defendant,* however, does not necessarily mean that they are coming from the same *source.* "The source of the funds may be determined to be collateral or independent, even though the [tortfeasor] supplies such funds.... Application of the collateral source rule depends less upon the source of funds than upon the character of the benefits received." *Haughton v. Blackships, Inc.,* 462 F.2d 788, 790 (5th Cir.1972). Thus, in order to determine whether the collateral source rule is applicable, courts have looked to the nature of the payment and the reason the payment is being made rather than simply looking at whether the defendant is paying twice.

In *Karsten v. Kaiser Foundation Health Plan, Inc.,* 808 F.Supp. 1253, 1256–57 (E.D.Va.1992), for example, a member of a health maintenance plan sued the health maintenance organization (HMO) for negligent care. The plaintiff was successful on her medical malpractice claim, but the HMO objected to the award to her of compensatory damages for medical bills incurred under the HMO contract. The HMO contended that it had already paid her medical bills and that, because the payments were not collateral to the HMO, the collateral source rule was inapplicable and it should not be made to pay for those expenses a second time. The district court held that the inclusion of these damages was permissible under Virginia's collateral source rule. The court stated that the focus should not be on the physical identity of the payment's source, but on the nature of the benefit itself:

> Even though the same defendant is being asked to pay the same damages twice, it is patent that the nature of the two payments is different. The nature of the first is as a payment from defendant as insurer to the plaintiff insured. The nature of the second is as a payment from defendant as tortfeasor to the plaintiff as the party injured by the defendant's negligence. It is axiomatic that the plaintiff is entitled to receive the benefit of her bargain under the insurance contract, irrespective of the fact that the carrier servicing that contract may also be the tortfeasor.

brief citing the Restatement before this court in the earlier appeal.

... To set off payments owed by the defendant as insurer against compensation owed by the defendant as tortfeasor allows the defendant to reap a windfall by allowing it to avoid its contractual obligations to the plaintiff.

*Id.* at 1258.

These principles have carried over into suits against the government under the FTCA. Although the government failed to tap into this body of law, we note that courts applying the collateral source rule in FTCA suits have looked to the source and nature of the payments received by the plaintiff, even though both payments were made by the government. *See generally* John F. Wagner, Jr., Annotation, *Application of Collateral Source Rule in Actions Under Federal Tort Claims Act (28 U.S.C. § 2674),* 104 A.L.R.Fed. 492 (1991). Thus, courts generally have held that state collateral source rules apply against the government in FTCA cases (1) if the payment to the plaintiff comes from a specially funded source distinct from the unsegregated general revenues of the Federal Treasury, *e.g., United States v. Hayashi,* 282 F.2d 599 (9th Cir.1960), or (2) if the plaintiff contributed to the government payments and, thus, was entitled to the payments irrespective of the damages award, *e.g., Overton v. United States,* 619 F.2d 1299 (8th Cir.1980). Under this line of cases, courts have held state collateral source rules applicable when the government payments take the form of civil service sick leave payments,[4] civil service retiree compensation,[5] Medicare payments [6] and social security benefits.[7]

With respect to veterans' medical benefits, however, a number of courts have held that, because the benefits do not come from a specially funded source and ostensibly because the veteran did not contribute to his medical benefits, the source was not collateral to the damage award and, thus, the collateral source rule was inapplicable. *Steckler v. United States,* 549 F.2d 1372 (10th Cir.1977); *Feeley v. United States,* 337 F.2d 924, 934 (2d Cir.1964); *United States v. Brooks,* 176 F.2d 482 (4th Cir.1949); *Green v. United States,* 530 F.Supp. 633 (E.D.Wis.1982), *aff'd on other grounds,* 709 F.2d 1158 (7th Cir. 1983); *cf. Mays v. United States,* 806 F.2d 976 (10th Cir.1986) (Civilian Health and Medical Program of the Uniform Services (CHAMPUS) benefits for certain retired members of the armed services and their dependents), *cert. denied,* 482 U.S. 913, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987).

But on the crucial point whether the medical benefits are deemed collateral to an FTCA award under Wisconsin law, we are of the view that the Wisconsin Supreme Court would deem these benefits collateral. In *Smith v. United Services Automobile Ass'n,* 52 Wis.2d 672, 190 N.W.2d 873 (1971), the plaintiff was involved in a car accident, was injured and was treated at the Great Lakes Navy Hospital, where he was entitled to free medical care as a member of the United States Navy. After the plaintiff and the Navy settled their claims with the tortfeasor's insurance company, the plaintiff then filed a claim against *his* insurance company to collect for the medical services provided both by the Navy and by a private hospital. His insurance company refused to pay for the services provided by the Navy, and the plaintiff sued. The Wisconsin Supreme Court held that whether the plaintiff was entitled to the medical care benefits under his insurance agreement depended upon the status of his Navy-provided care. If the Navy care was gratuitous, then the plaintiff was not entitled to payment under his insurance contract; if, however, the Navy care was provided for a "consideration," then the plaintiff was entitled to the payment. The

---

**4.** *See, e.g., Leeper v. United States,* 756 F.2d 300 (3d Cir.1985); *United States v. Gallops,* 207 F.2d 48 (5th Cir.1953).

**5.** *See, e.g., Jennings v. United States,* 291 F.2d 880 (4th Cir.1961); *United States v. Price,* 288 F.2d 448 (4th Cir.1961).

**6.** *See, e.g., Manko v. United States,* 830 F.2d 831 (8th Cir.1987); *Berg v. United States,* 806 F.2d 978 (10th Cir.1986); *Siverson v. United States,* 710 F.2d 557 (9th Cir.1983); *Titchnell v. United States,* 681 F.2d 165 (3d Cir.1982).

**7.** *See, e.g., Smith v. United States,* 587 F.2d 1013 (3d Cir.1978); *Coates v. United States,* 612 F.Supp. 592 (C.D.Ill.1985).

court concluded that the care was *not* a gratuity:

> We deal with something more than a gratuity to be bestowed at the option of the employer as a gift to its employees. We deal rather with a perquisite of employment, one of the benefits provided by the Congress, along with the serviceman's pay, as compensation for services rendered the members of the armed forces. The plaintiff, and others in the armed services, do not pay a cash premium for such entitlement to hospital and medical care, but they pay by the performing of the work and duties of the job or position they hold. The work they perform is what they pay or give; the entitlement to medical and hospital treatment is one of the returns they receive.

*Id.*, 195 N.W.2d at 875; *accord United States v. Bender Welding & Mach. Co.*, 558 F.2d 761, 764 (5th Cir.1977) (The Veterans' Benefits Act "fulfills a congressional purpose of providing free hospital services to veterans ... in consideration for their prior service to their country."). Thus, under Wisconsin law, these benefits are analogous to traditional employee health benefits whereby an employee secures health benefits by contributing part of his salary to sustain the program. In the case of veterans, the consideration is his service and, in all likelihood, a lower salary in order to defray the costs of his and other servicemen's care. Accordingly, we think it clear that Wisconsin law would treat these benefits as collateral to an award under the FTCA.

Although Wisconsin law differs from those cases holding that veterans' medical benefits

are not collateral to an FTCA award, our analysis and conclusion here does not conflict with them.[8] For the cases holding that veterans' medical benefits are not collateral to the FTCA award deal with medical treatment *already received.* In those cases, the courts held that the government should not have to pay for the services it already provided to the plaintiff. The plaintiff here, however, does not seek compensation for past medical treatment, only future medical treatment. As to future medical expenses, the courts have consistently held that such expenses *are* recoverable. *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1084 (2d Cir. 1988); *Feeley*, 337 F.2d at 934–35; *Powers v. United States*, 589 F.Supp. 1084, 1107–08 (D.Conn.1984); *Christopher v. United States*, 237 F.Supp. 787, 798–99 (E.D.Pa.1965). *But see Rufino v. United States*, 642 F.Supp. 84, 86 (S.D.N.Y.1986). In *Feeley*, for example, the court denied an award for past medical care on the ground that the government already had provided the care and, because the veterans' benefits were not from a specially funded source and because Feeley did not contribute premiums necessary to establish the benefits, the veterans' benefits were not deemed collateral to the FTCA award.[9] The court went on, however, to award damages for future medical care, even though the plaintiff was entitled to free care as a result of a service-connected injury. "To force a plaintiff to choose between accepting public aid or bearing the expense of rehabilitation himself," the court held, "is an unreasonable choice":

> The plaintiff may not be satisfied with the public facilities; he may feel that a particu-

---

**8.** We note that in *Carter v. United States*, 982 F.2d 1141, 1145 (7th Cir.1992), we stated that "Veteran's benefits ... cannot be analogized to payments from a third party, which accumulate with tort awards under the collateral-source rule." *Carter*, however, does not control this case. First, *Carter* dealt with disability benefits already received, not future medical expenses, and Congress has made clear that disability benefits are to be aggregated and offset from an FTCA award. 38 U.S.C. § 351; *United States v. Kubrick*, 444 U.S. 111, 116 n. 5, 100 S.Ct. 352, 356, n. 5, 62 L.Ed.2d 259 (1979). No such provision exists regarding the provision of medical benefits. The plaintiffs in *Carter*, thus, conceded that the benefits should be offset against

their recovery in tort. Second, *Carter* relied on *Brooks* and made no mention of the Supreme Court's decision in the instant case, which held that nothing under federal law precludes double payment with respect to future medical expenses. Finally, in *Carter* we were applying Indiana substantive law, whereas here we apply the substantive law of Wisconsin.

**9.** The court in *Feeley* also suggested that application of the collateral source rule to recover the value of free hospital care rendered by the government would seem to embody elements of punitive damages prohibited by the FTCA. *Feeley*, 337 F.2d at 934.

lar private physician is superior; in the future because of over-crowded conditions he may not even be able to receive timely care. These are only a few of many considerations with which an individual may be faced in selecting treatment. The plaintiff's past use of the government facilities does not ensure his future use of them. He will now have the funds available to him to enable him to seek private care. He should not be denied this opportunity. 337 F.2d at 935. Although we recognize that, at least in a case involving a comatose plaintiff, the plaintiff's representative has little incentive to forgo free care and to pay for private care from the plaintiff's resources, we share the reluctance of other courts addressing this issue to deny the plaintiff the freedom to choose his medical provider and, in effect, to compel him to undergo treatment from his tortfeasor.

Along with this justification for awarding future medical expenses, however, we add that in our opinion, which accords with Wisconsin law, the veteran *has* contributed to the medical benefits. Like insurance coverage, a veteran's medical benefits are collateral to the damage award. And if, on the outside chance that such a view is mistaken and the veteran has not earned these benefits, but rather receives them at the pleasure of the government, then the speculative nature of the prospective benefits prohibits us from offsetting the award. *Powers,* 589 F.Supp. at 1108; *cf. Carter,* 982 F.2d at 1145.

### III.

To be sure, the award of damages for future medical care in the light of the plaintiff's right to free treatment will result in a windfall to Molzof, or should we say, to his estate and his attorneys. But that is the nature of the collateral source rule. The state of Wisconsin could abolish the rule; Congress, with respect to FTCA claims, could require such awards to be offset.[10] Even if we were so inclined, however, we are in no position to bring about such a change. For the foregoing reasons, we reverse the decision of the district court and remand with

10. As we noted, *supra* note 8, Congress has explicitly limited double recovery under 38 U.S.C.

instructions to award plaintiff's future medical expenses in the amount of $1,280,529.

REVERSED AND REMANDED.

§ 351 with respect to veterans' disability payments.