**UNITED STATES of America, Plaintiff,**

v.

**GORMAN FUEL, INC., et al.,
Defendants.**

No. 88–173.

United States District Court,
E.D. Kentucky,
London Division.

July 17, 1989.

Bruce Hill, Dept. of the Interior, Knoxville, Tenn., for plaintiff.

Dean K. Hunt, Stephens, Thomas & Hunt, P.S.C., Lexington, Ky., for defendants.

## MEMORANDUM

SILER, Chief Judge.

The government brought this action to collect Abandoned Mine Lands fees (AML fees) from the defendants. This action has been consolidated with Civil Action Nos. 88–57 and 88–184. Civil Action No. 88–57, filed by defendants on March 25, 1989, arose after the government conducted an audit of defendants' records and billed defendants for AML fees on tonnage which had been processed, but not mined, by defendants. Civil Action No. 88–57 challenged the defendants' liability for the AML fees. On July 19, 1988, defendants filed Civil Action No. 88–184, pursuant to the citizen suit provision of the Surface Mining Control and Reclamation Act (SMCRA, or the Act), 30 U.S.C. § 1270. Civil Action No. 88–184 alleged that the government failed to properly implement the provisions of the Act which provide for the collection of AML fees. On April 3, 1989, all three actions were consolidated under Civil Action No. 88–173. Prior to consolidation, the government moved to dismiss the actions brought by the defendants for lack of subject matter jurisdiction. The Court denied without prejudice the motions to dismiss as being moot, as all the issues were before the Court in the consolidated action. The government has now renewed its motion to dismiss. For the following reasons, the motion to dismiss will be granted in part and denied in part.

*Anti–Injunction Act and Declaratory Judgment Act*

Before considering the applicability of the Anti–Injunction Act to AML fees, the Court first notes that AML fees are taxes. *United States v. Tri–No Enterprises, Inc.,* 819 F.2d 154, 158–59 (7th Cir.1987); *United States v. River Coal Co.,* 748 F.2d 1103, 1106 (6th Cir.1984); *United States v. Devil's Hole, Inc.,* 747 F.2d 895, 898 (3d Cir.1984). *See also* 123 Cong.Rec. 12655–61 (1975).

■ The government first asserts that defendants' challenge of AML fees is prohibited by the Anti–Injunction Act. The Anti–Injunction Act provides, in part:

[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a). This statute, known as the "Anti–Injunction Act," has been in effect since 1867. Its primary purpose is to protect the government's need to expeditiously assess and collect taxes with minimal interference from the judiciary. *Bob Jones University v. Simon*, 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1974). This provision is found in subtitle F of Title 26, which pertains to proceedings instituted by taxpayers. Section 7851 of this subtitle specifically details the applicability of various sections of the revenue laws:

(A) *General rule*—The provisions of subtitle F shall take effect on the day after the date of enactment of this title and *shall be applicable with respect to any tax imposed by this title* .... (Emphasis added.)

26 U.S.C. § 7851(a)(6)(A). The government asserts this language is not limiting, but rather descriptive, and should be interpreted to mean that the Anti–Injunction Act applies to all taxes in Title 26, and to all other taxes as well. However, the government's interpretation is in direct conflict with the following language from *Federal Energy Administration v. Algonquin SNG, Inc.*, 426 U.S. 548, 96 S.Ct. 2295, 49 L.Ed.2d 49 (1976):

The Anti–Injunction Act applies to suits brought to restrain assessment of taxes assessable under the Internal Revenue Codes of 1954 and 1939. [Citations omitted.] The license fees in this case are assessed under neither Code.... The fees are therefore not "taxes" within the scope of the Anti–Injunction Act.

*Id.* at 558 n. 9, 96 S.Ct. at 2301 n. 9. The government asserts that this Court is not bound by the language in *Algonquin*, as it is dicta. While it is true the Supreme Court did not squarely address the issue of the applicability of the Anti–Injunction Act to taxes outside Title 26, the language in the quoted passage is explicit, and this Court will follow it.

■ The Declaratory Judgment Act authorizes federal courts to grant declaratory judgments "except with respect to Federal taxes." 28 U.S.C. § 2201. Although written more broadly, it is coextensive with the Anti–Injunction Act. *Perlowin v. Sassi*, 711 F.2d 910, 911 (9th Cir.1983). If a suit is allowed under the Anti–Injunction Act, it is not barred by the Declaratory Judgment Act. *Eastern Kentucky Welfare Rights Organization v. Simon*, 506 F.2d 1278, 1285 (D.C.Cir.1974), *vacated on other grounds*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Accordingly, in the instant case, defendants' claims are barred by neither the Anti–Injunction Act nor the Declaratory Judgment Act, and the government's motion to dismiss, based on these statutes, will be denied.

*SMCRA's Citizen Suit Provision*

■ The government asserts that, insofar as defendants base their claims on SMCRA's citizen suit provision, the claims should be dismissed, as defendants have improperly used the citizen suit provision as a jurisdictional basis for their claims. The citizen suit provision, SMCRA Section 520, 30 U.S.C. § 1270, states in part:

(a) *Civil action to compel compliance with this chapter*

Except as provided in subsection (b) [concerns notice and prior action] of this section, *any person* having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this chapter—

(1) against the United States or any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution which is alleged to be in violation of the provisions of this chapter or of any rule, regulation, order or permit issued pursuant thereto, or against any other person

who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter; or

(2) against the Secretary or the appropriate State regulatory authority to the extent permitted by the eleventh amendment to the Constitution where there is alleged a failure of the Secretary or the appropriate State regulatory authority to perform any act or duty under the chapter which is not discretionary with the Secretary or with the appropriate State regulatory authority.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties. (Emphasis added.)

Defendants assert that the phrase "any person" includes those entities, such as defendants, against whom the Office of Surface Mining Reclamation and Enforcement seeks enforcement. However, the Court is not persuaded by this argument. The Court has found no support for defendants' interpretation, either in legislative history, or in interpretation of similar citizen suit provisions in the Clean Air Act (CAA) and the Federal Water Pollution Control Act (FWPCA).

### A. Interpretation of the phrase "any person"

SMCRA's citizen suit provision was patterned after citizen suit provisions in the CAA and FWPCA. Legislative history concerning these citizen suit provisions makes clear that the provisions were designed to allow private individuals to prod the agency into acting against violators, or to allow the private individuals themselves to bring actions against violators. *See Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 721–30 (compilation of legislative history of the citizen suit provision of the CAA), 701–02 & nn. 46–47 (legislative history of the citizen suit provision of the FWPCA) (D.C.Cir.1975). Thus the legislative history of the citizen suit provision of the CAA and the FWPCA, after which the SMCRA citizen suit was patterned, supports the interpretation that members of the regulated industry may not avail themselves of the provisions of the citizen suit.

Cases which have analyzed the citizen suit provisions of the CAA and the FWPCA also support this Court's interpretation that members of the regulated industry are not "any person" for purposes of the citizen suit provision. *See id.* at 699–702; *Friends of the Earth v. Carey*, 535 F.2d 165, 172–73 (2d Cir.1976).

SMCRA's legislative history clearly states that the purpose of the citizen suit provision is to encourage participation by private citizens in the enforcement of the Act's provisions.

The success or failure of a national coal surface mining regulation program will depend, to a significant extent, on the role played by citizens in the regulatory process. The State or Department of Interior can only employ so many inspectors, only a limited number of inspections can be made on a regular basis and only a limited amount of information can be required in a permit or bond release application or elicited at a hearing.... Thus in imposing several provisions which contemplate active citizen involvement the committee is carrying out its conviction that the participation of private citizens is a vital factor in the regulatory program as established by the Act.

H.R.Rep. No. 896, 94th Cong., 2d Sess. 39 (1976). Thus, according to the legislative history, "any person" means "private citizens." The Court interprets the phrase "private citizens" in the most straightforward and logical way to mean those outside the regulatory and enforcement scheme of SMCRA. Thus "private citizens" are those who are neither the regulatory agency (the Office of Surface Mining Reclamation and Enforcement) nor members of the regulated industry (the coal industry). To allow members of the coal industry to challenge an agency determination via a citizen suit could, in some cases, lead to the anomalous result of the citizen suit provision's being used to weaken agency enforcement, rather than strengthen it. Additionally, allowing the regulated industry to use the citizen suit provision could substantially increase federal district courts' dockets, and undermine the administrative structure of

the Act, as members of the coal industry could challenge adverse agency determinations in district court, simultaneous with, prior to, or in lieu of their administrative remedies.

### B. Equal protection analysis

■ Defendants assert that an interpretation of the citizen suit provision that excludes members of the regulated industry raises constitutional equal protection questions. An equal protection challenge to a federal law is reviewed under the implied equal protection guarantee of the fifth amendment due process clause. *Vance v. Bradley,* 440 U.S. 93, 94 & n. 1, 99 S.Ct. 939, 941 & n. 1, 59 L.Ed.2d 171 (1979). A federal law in the area of economics or social welfare which treats one group of people differently than another group of people will be upheld so long as it rationally relates to a legitimate government purpose. *See, e.g., United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973) (bankruptcy fees and access to courts); *Jefferson v. Hackney,* 406 U.S. 535, 546, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285 (1972) (welfare payments for dependent children). *See generally* Nowak, *Constitutional Law,* Ch. 16, Section I 585–99 (2d ed. 1983).

SMCRA's citizen suit provision classifies persons into two groups: those who cannot bring citizen suits and those who can. Those who cannot bring citizen suits include members of the coal industry and the Office of Surface Mining Reclamation and Enforcement. Those who can bring citizen suits include private individuals who wish to enforce SMCRA's provisions. SMCRA, as a law concerning surface mining and its effects on the environment, concerns economic regulation and social welfare. Thus in order to meet an equal protection challenge, the classification in the citizen suit provision must be rationally related to a legitimate government purpose. *United States v. Kras, Jefferson v. Hackney, supra.* The purpose of the citizen suit provision is to:

(i) assure that appropriate procedures are provided for the *public participation* in the development, revision, and

*enforcement* of regulations, standards, reclamation plans, or programs established by the Secretary or any State under this chapter; (Emphasis added.)

SMCRA Section 102(i), 30 U.S.C. § 1202(i). *See also* legislative history quoted above. These purposes are related to the purposes of the Act, which are, in part, to:

(a) establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations;

\* \* \* \* \* \*

(d) assure that surface coal mining operations are so conducted as to protect the environment;

\* \* \* \* \* \*

(e) assure that adequate procedures are undertaken to reclaim surface areas as contemporaneously as possible with the surface coal mining operations; ....

SMCRA Section 102(a), (d), (e), 30 U.S.C. § 1202(a), (d), (e). These are legitimate government purposes. The classification of not allowing the coal industry to avail itself of the citizen suit provision is rationally related to the above purposes, as Congress may have concluded that the coal industry could use the citizen suit provision to weaken enforcement rather than strengthen it, or to circumvent administrative remedies. In making this policy decision, the legislature acted neither irrationally nor with an invidious motive. Thus the classification in the citizen suit provision is not constitutionally infirm, and defendants may not bring an action under SMCRA's citizen suit provision. Accordingly, the government's motion to dismiss defendants' claims based on the citizen suit provision will be granted.