CRAWLEY, Judge.
Apex Coal Corporation and Warco, Inc., entered into a mining-services contract in September 1985. The agreement provided that Apex would extract coal on land owned by Warco. Warco was the predecessor corporation of Gulf States Paper Corporation, which in October 1985 assumed Warco’s rights and liabilities created by the contract. From April 1992 to December 1992, Van American Insurance Company and Clarendon National Insurance Company (the “sureties”) posted 14 performance bonds for the mining operations performed by Apex, pursuant to the Alabama Surface Mining Control and Reclamation Act (“ASMCRA”), Ala.Code 1975, §§ 9-16-70 to -107. The Alabama Surface Mining Commission issued three mining permits to Apex for surface mining on land owned or leased by Gulf States. Each permit related to several individual mining areas, called “increments.” Apex had a total of 14 increments; hence, 14 bonds were required.
Apex was initially financially successful, but later it experienced financial difficulties. Apex eventually filed for Chapter 11 bankruptcy protection. Apex continued to mine and to comply with the Commission’s reclamation requirements. Apex converted the Chapter 11 proceeding to a Chapter 7 liquidation and ceased its mining operations. The Commission issued several citations to Apex, citing it for not complying with the reclamation requirements.
Eventually, the Commission issued a “show cause” order to Apex and to the sureties, requesting them to show cause why the bonds should not be forfeited as to two of the three permits. Apex and the sureties filed a response and requested a hearing before the Commission’s division of hearings and appeals. Apex and the sureties also filed a motion, requesting that the Commission issue a “show cause” order to Gulf States. Apex and the sureties argued before the Commission that Gulf States was also liable for the reclamation of the lands. Apex and the sureties argued that § 9-16-95 provided them a cause of action against Gulf States. The Commission’s hearings division denied this request and ordered that the bonds be forfeited.
The Commission issued a “show cause” order as to the third permit. Apex and the sureties made no response, and the Commission’s hearing division entered a default and ordered the forfeiture of the bonds related to the third permit.
Apex and the sureties appealed the Commission’s two orders of forfeiture, to the circuit court; that court consolidated the cases for discovery purposes. The Commission and Gulf States each filed a summary-judgment motion as to both orders of forfeiture and as to the standing of Apex and the sureties to sue Gulf States, pursuant to § 9-16-95. The circuit court granted all of the summary-judgment motions. Apex and the sureties appealed to the supreme court, which transferred the appeals to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
We review a summary judgment de novo; we apply the same standard as was applied in the circuit court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c); see Lee v. City of Gadsden, *173 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038. “Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). See West, 547 So.2d at 871, and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989), for a further discussion of the application of the summary-judgment standard.
Apex and the sureties do not dispute that Apex failed to reclaim the land as required by the ASMCRA. They argue that the Commission should have found that Gulf States violated the Act and should have held it jointly liable, along with Apex, for violating the Act. They argue that Apex was acting as an agent of Gulf States and that Gulf States, as Apex’s principal, is liable for Apex’s noncompliance with the Act. Gulf States and the Commission contend that whether Gulf States committed any violation of the ASMCRA is irrelevant to the question whether the sureties are liable. They argue that the sureties are unconditionally liable for Apex’s noncompliance with the Act and, because it is undisputed that Apex did not comply with the Act, that the Commission properly ordered the forfeiture of the bonds.
The Commission issued the surface-mining permits to Apex, pursuant to the Alabama Surface Mining Regulations, Ala. Admin. Code § 880-X-8B-.01 et seq. The Commission never issued a permit to Gulf States; therefore, Gulf States is not a “permittee,” as that term is defined by § 880-X-2A-.06(116). The sureties entered into surety contracts by which they assumed responsibility for Apex’s compliance with the ASMCRA. The sureties had no such contracts with Gulf States.
We agree with Gulf States and the Commission that the relationship between Gulf States and Apex is irrelevant to a question of the sureties’ liability. It is well settled that a surety’s liability is a primary liability, not contingent on any event other than its principal’s liability and not contingent upon the principal’s relationship with third parties, such as Apex’s relationship with Gulf States. See Ex parte Water Works Bd. of Gulf Shores, 508 So.2d 242 (Ala.1987); Rowe v. Bank of New Brockton, 207 Ala. 384, 92 So. 643 (1922); Averyt Drug Co. v. Ely-Robertson-Barlow Drug Co., 194 Ala. 507, 69 So. 931 (1915); and Dampskibsaktieselskabet Habil v. United States Fid. & Guar. Co., 142 Ala. 363, 39 So. 54 (1905). Here, the sureties are the sureties for Apex’s compliance with the ASMCRA. It is undisputed that Apex ceased to comply with the ASMCRA; therefore, the circuit court properly concluded that, as a matter of law, the sureties are liable for Apex’s noncompliance.
Apex and the sureties also argue that the Commission erred and the circuit court erred by ordering the forfeiture of the bonds without first giving them the opportunity to perform the reclamation requirements. Section 9—16—93(d) sets out the procedure once the Commission finds that a holder of a surface-mining permit, such as Apex, is violating the Act:
“When, on the basis of an inspection, the regulatory authority or its authorized representative determines that a pattern of violations of any requirements of this article or any permit conditions exists or has existed, and if the regulatory authority or its authorized representative also find that such viola *174 tions are caused by the unwarranted failure of the permittee to comply with any requirements of this article or any permit conditions, or that such violations are willfully caused by the permittee, the regulatory authority or its authorized representative shall forthwith issue an order to show cause as to why the permit should not be suspended or revoked and shall provide opportunity for a public hearing before a hearing officer pursuant to sections 9-16-78 and 9-16-79 of this article. If a hearing is requested, the hearing officer shall inform all interested parties of the time and place of the hearing. Upon the permittee’s failure to show cause as to why the permit should not be suspended or revoked, the hearing officer shall forthwith suspend or revoke the permit. If the hearing officer revokes the permit, the permittee shall immediately cease surface coal mining operations on the permit area and shall complete reclamation within a period specified by the hearing officer or the hearing officer shall declare as forfeited the performance bonds for the operation.”
As stated above, the Commission first sent Apex and the sureties notice of Apex’s violations. Then, the Commission issued “show cause” orders that required Apex and the sureties to show cause why the permits should not be revoked and to provide a reclamation plan. Apex and the sureties responded to the first “show cause” orders as to two of the permits by arguing that Gulf States was liable for the reclamation. As to the “show cause” order related to the third permit, Apex and the sureties made no response.
In his special writing, Judge Murdock points out that the show cause orders gave Apex and the sureties a choice of paying the bonds to the Commission within 30 days or submitting a reclamation plan. Apex and the sureties did not comply with the show cause orders. The Commission then entered an order declaring the bonds forfeited or requiring Apex and the sureties to submit a reclamation plan subject to its approval by the Commission. Apex and the sureties then appealed to the circuit court. We conclude that because Apex and the sureties never submitted a reclamation plan for the Commission’s approval, it waived its right to submit a plan once it appealed the Commission’s order. Section 9-16-93(d) provides that if no reclamation plan is submitted, then forfeiture of the bonds is the only recourse. If Apex and the sureties had submitted a reclamation plan which the Commission did not approve, then the circuit court could have reviewed the Commission’s denial of the plan. Because Apex and the sureties never submitted a reclamation plan for the Commission’s approval, then the circuit court could only affirm the Commission’s order on the only relief available to Apex and the sureties — forfeiture of the performance bonds in accordance with § 9 — 16— 93(d).
Last, Apex and the sureties argue that the sureties have a cause of action against Gulf States pursuant to § 9-16-95. That section reads:
“(a) Except as provided in subsection (b) of this section, any person having an interest which is or may be adversely affected, (or any citizen of this state having knowledge that any of the provisions of this article are willfully or deliberately not being enforced and who files a statement with the regulatory authority in writing and under oath with facts set forth specifically stating the nature of the failure to enforce the provisions of this article), may commence a civil action on his own behalf to compel compliance with this article:
*175 “(1) Against any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution of the United States which is alleged to be in violation of the provisions of this article or of any rule, regulation, order or permit issued pursuant thereto, or against any other person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this article; or
“(2) Against the regulatory authority to the extent permitted by the eleventh amendment to the Constitution of the United States where there is alleged a failure of the regulatory authority to perform any act or duty under this article which is not discretionary with the regulatory authority.
“In a civil action brought pursuant to this subsection, the cause shall be tried in the circuit court with jurisdiction over the location of the regulatory authority’s principal office, except that in a civil action brought against any person pursuant to subdivision (1) of this subsection, the cause shall be tried in the circuit court of the county where the alleged violation occurred and the action in either case shall be prosecuted in the name of the real party in interest.
“(b) No action may be commenced:
“(1) Under subdivision (a)(1) of this section:
“a. Prior to 60 days after the plaintiff has given notice in writing of the violation (i) to the regulatory authority, (ii) to the secretary of the interior, and (iii) to any alleged violator; or
“b. If the secretary of the interi- or, or the regulatory authority, has commenced and is diligently prosecuting a civil action to require compliance with the provisions of this article, or any rule, regulation, order, or permit issued pursuant to this article. In any such action in a court of the United States any person may intervene as a matter of right; or
“(2) Under subdivision (a)(2) of this section prior to 60 days after the plaintiff has given notice in writing of such action to the regulatory authority in such manner as the regulatory authority by regulation shall prescribe except that such action may be brought immediately after such notification in the case where the violation or order complained of constitutes an imminent threat to the health or safety of the plaintiff or would immediately affect a legal interest of the plaintiff.
“(c) In such action under this section, the regulatory authority or the secretary of the interior if not parties, may intervene as a matter of right.
“(d) The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. The court shall, if a temporary restraining order or preliminary injunction is sought require the filing of a bond or equivalent security in accordance with the Alabama rules of civil procedure.
“(e) Nothing in this section shall restrict any right with any person (or class of persons) may have under any statute or common law to seek enforcement of any of the provisions of this article and the regulations thereunder, or to seek any other relief, including relief against the regulatory authority, as permitted by the Constitution and laws of' this state.
*176 “(f) Any person who is injured in his person or property through the violation by any operator of any rule, regulation, order, or permit issued pursuant to this article may bring an action for damages in the venue available under Alabama law. The court may award reasonable attorney and expert witness fees to the prevailing party. Nothing in this subsection shall affect the rights established by or limits imposed under state workmen’s compensation laws.”
The sureties argue that they have a cause of action against Gulf States pursuant to this statute. The sureties argue that they are “person[s] who [are] injured in [their] person or property through the violation by any operator.” They argue that Gulf States is an “operator” as that term is defined by the ASMCRA and that Gulf States’ noncompliance with the Act resulted in the forfeiture of the bonds they executed on behalf of Apex. We conclude that the sureties do not have standing to bring an action pursuant to § 9-16-95.
No Alabama court has interpreted § 9-16-95 to determine who is entitled to institute an action under subsection (a) or subsection (f). The United States District Court for the Eastern District of Kentucky interpreted 30 U.S.C.A. § 1270, a provision of the Federal Surface Mining Control and Reclamation Act (the “SMCRA”) parallel to § 9-16-95. United States v. Gorman Fuel, Inc., 716 F.Supp. 991 (E.D.Ky.1989). That court explained that § 1270 is a citizen-suit provision based on the citizen-suit provisions of the Clean Air Act (the “CAA”) and the Federal Water Pollution Control Act (the “FWPCA”). 716 F.Supp. at 994. The court stated:
“Legislative history concerning these citizen suit provisions makes clear that the provisions are designed to allow private individuals to prod the agency into acting against violators, or to allow private individuals themselves to bring actions against violators. Thus the legislative history of the citizen suit provision of the CAA and the FWPCA also support this Court’s interpretation that members of the regulated industry are not ‘any person’ for purposes of the citizen suit provision.
“SMCRA’s legislative history clearly states that the purpose of the citizen suit provision is to encourage participation by private citizens in the enforcement of the Act’s provisions.
“ ‘. [T]he participation of private citizens is a vital factor in the regulatory provision as established by the Act.’
“H.R.Rep. No. 896, 94th Cong., 2nd Sess. 39 (1976). Thus, according to the legislative history ‘any person’ means ‘private citizens.’ The Court interprets the phrase ‘private citizens’ in the most straightforward and logical way to mean those outside the regulatory and enforcement scheme of SMCRA. Thus ‘private citizens’ are those who are neither the regulatory agency (the Office of Surface Mining Reclamation and Enforcement) nor members of the regulated industry (the coal industry). To allow members of the coal industry to challenge an agency determination via a citizen suit could, in some cases, lead to the anomalous result of the citizen suit provision’s being used to weaken agency enforcement, rather than strengthen it.”

Id.

We adopt the reasoning of the Eastern District of Kentucky and agree-that a member of the coal industry is not a “private citizen” and cannot be allowed to challenge the actions of the Commission. We recognize that the sureties are not in the business of mining coal; however, they have contracted to indemnify Apex, a member of the coal industry. As stated *177 above, the sureties’ liability for Apex’s compliance with the ASMCRA is a primary liability (see Ex parte Water Works Bd. of Gulf Shores, 508 So.2d 242 (Ala.1987); Rowe v. Bank of New Brockton, 207 Ala. 384, 92 So. 643 (1922); Averyt Drug Co. v. Ely-Robertson-Barlow Drug Co., 194 Ala. 507, 69 So. 981 (1915); and Dampskibsaktieselskabet Habil v. United States Fid. & Guar. Co., 142 Ala. 363, 39 So. 54 (1905)). Because the sureties are assuming the liability of Apex, they, just like Apex, which was a member of the coal industry, do not have standing to file a “citizen suit” under § 9-16-95 against Gulf States.
We conclude that the circuit court properly entered the summary judgment for the Commission and Gulf States. We affirm that judgment.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in part and dissents in part.